# McKeever, Appellant, *v.* Westmoreland Coal Company.

*Contract—Construction placed by parties on contract—Coal lease—Royalties—Mines and mining.*

Where the provisions of a coal lease, relating to royalties, are obscure, and are susceptible of two different meanings, and the lessor for a long period of years has accepted payment of royalties on a basis determined by one construction of the lease, he will not be permitted to set up another construction of the lease, and claim royalties, based upon such construction.

Argued Oct. 17, 1907. Appeal, No. 182, Oct. T., 1907, by plaintiff, from judgment of C. P. Westmoreland Co., Nov. T., 1905, No. 277, on verdict for plaintiff in case of J. L. McKeever, Executor of Robert S. Robinson, deceased, v. Westmoreland Coal Company. Before MITCHELL, C. J., FELL,

Brown, Mesterzat, Potter, Elkin and Stewart, JJ. Affirmed.

Assumpsit for royalties, amounting to $20,453.10, under a coal lease. Before McConnell, J.

Verdict and judgment for plaintiff for $7,048.08.

The opinion of the Supreme Court states the case.

*Errors assigned* were to various rulings on evidence.

*G. B. Shaw*, with him *John C. Silsley, Edward E. Robbins* and *John E. Kunkle*, for appellant.

*Paul H. Gaither*, with him *Charles E. Whitten*, for appellee.

Opinion by Mr. Justice Elkin, January 6, 1908:

Robinson, the lessor, by an agreement in writing, dated December 30, 1886, leased, demised and granted to the Ocelo Coal Company the right to mine and remove all the black and merchantable coal under a certain tract of land therein described, subject to certain reservations therein contained. The original lessee subsequently assigned the lease to the Westmoreland Coal Company, the appellee here. This controversy grows out of a dispute as to the proper interpretation of that contract. The learned counsel for appellant contend that under the terms of the lease the lessor should be paid thirty cents per 100 bushels of lump coal, or at the rate of $300 for every 100,000 bushels of coal mined and removed from the premises. It was provided in the lease " that a rent or royalty of thirty cents per 100 bushels of lump coal, and at the rate of $300 per acre of 100,000 bushels of coal mined and removed from said demised premises," should be paid to the lessor. If this provision of the contract stood alone, without qualification or explanation, or if the parties themselves had not interpreted their own agreement, it must be conceded there would be much force in the position taken by the appellant. It is contended for appellee that a proper interpretation of the agreement is that the parties intended to fix the amount to be paid for each and every acre of coal mined and removed from the premises at

the rate of $300 per acre. In support of this position other parts of the agreement are relied on. It is therein provided, among other things, that " a survey of the coal mined and removed from the said premises shall be made at the end of every six months by a competent civil engineer ; " also that when the coal mined during the preceding six months shall be thus ascertained, " a calculation shall be made of what the quantity of coal mined comes to at $300 per acre ; and if the sum of the monthly payments is less than the sum made calculating by acres," certain provisions are made for payment of the deficiency. It is further stipulated that the lessee shall pay to the lessor $900 or more each year " until all the coal hereby leased at the rate of $300 per acre is paid for." These covenants are relied on to support the contention that a proper interpretation of the contract itself as a whole only required payment of royalty for the coal mined and removed at the rate of $300 per acre. The agreement was not carefully drawn so as to fix with absolute certainty the exact meaning of the parties on the question of the payment of royalties. It is susceptible of two different meanings, and if the case stood on the agreement alone we would have some hesitation in reaching a conclusion. Whatever doubt has arisen in our minds in the consideration of the question involved is resolved in favor of the appellee because of the acts of the original lessor, who for a long period of years accepted payment of the royalties from the lessees on the basis of $300 per acre, as determined by actual survey and receipted in full for all royalties to the date when paid. On April 4, 1892, Robinson, the original lessor, executed a receipted bill for $300, in which it is stated, " the same being payment in full to April 1, 1892, for one acre of coal mined or to be mined as per lease to the Oceola Coal Company." The receipts appearing in the record are in full of all demands to the date fixed therein, or for the actual number of acres mined at the rate of $300 per acre. The conclusion is irresistible that the original lessor interpreted his own contract to mean a sale, or leasing, of his coal at an amount equivalent to $300 per acre, and for a long period of years accepted payment in full on this basis. We think the parties have construed their own contract, and courts will not disturb the rights and liabilities arising under the same

when these things have been definitely determined by the contracting parties themselves.

Judgment affirmed.