John McShain, Inc. v. General State Authority.

Argued May 7, 1973, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Stephen R. Bolden,* with him *Fell, Spalding, Goff & Rubin,* for appellant.

*Arnold Wainstein,* Assistant Counsel, with him *John A. Alogna,* Assistant Counsel, and *Michael A. Madar,* General Counsel, for appellee.

OPINION BY JUDGE MENCER, June 21, 1973:

On December 27, 1966, John McShain, Inc. (McShain) and the General State Authority of the Commonwealth of Pennsylvania (Authority) entered into General State Authority Contract No. 1104-10.1, under the terms of which McShain was to be the general contractor for the construction of a physical education building at Temple University.

Section 10C-22 of the specifications to the contract between McShain and the Authority is captioned "Alarm System" and reads as follows: "a. All hardware sets suffixed with (a) shall include a compact, self-contained warning alarm triggered by unauthorized open-

ing of door. Alarm shall be battery powered causing a loud, continuous blast by horns built into the unit. It shall also include a remote signalling system with multiple signal capability consisting of lights and buzzers at central station panelboard, operating on low voltage supervised lines to each monitored door through DC power supply and plug in type relays. Provide sufficient remote indicating panels to correspond with the quantity of alarms plus 25% expansion. Alarms and Remote indicating exit control equipment shall be of the type manufactured by Detex Corporation, New York, N. Y., or approved equal."

In order to make this alarm system operational, it was necessary to do certain electrical wiring. The electrical contract incident to this construction project did not contain any specifications or requirements for wiring the Detex Alarm System. Paragraph 17, Section III, of the General Conditions of Contract No. G.S.A. 1104-10.1 reads as follows: "All work that may be called for in the specifications and not shown on the drawings or shown on the drawings and not called for in the specifications, shall be executed and furnished by the Contractor as if described in both. Should any incidental work or materials be necessary for the proper carrying out of the intent of the specifications or plans, either directly or indirectly, the Contractor agrees to perform all such work and furnish and install all such materials as if the same were fully specified."

McShain commenced work on the aforesaid construction project on January 10, 1967. McShain furnished and installed the hardware for a Detex Alarm System in the metal frames of the doors in the building.[1] On March 24, 1969, the Authority ordered McShain to perform the electric wiring work on the Detex

---

[1] A difference of opinion existed as between McShain and the Authority as to whose obligation it was to do the wiring for the

Alarm System which resulted in McShain's engaging, under protest, the firm of Ross Electric Construction Company, Inc. (Ross) to perform the necessary wiring at a cost of $7,848.55. On April 1, 1970, McShain filed a statement of claim with the Board of Arbitration of Claims, seeking to recover damages from the Authority for this forced electrical work, which it alleged was extra and not its responsibility under the terms of Contract No. G.S.A. 1104-10.1.

After a hearing, held on May 11, 1971, the Board of Arbitration of Claims, on July 18, 1972, held against McShain on its claim for payment of the $7,848.55 which McShain had paid Ross for the necessary wiring relative to the Detex Alarm System. McShain filed this appeal from that decision.

Appeals from the Board of Arbitration of Claims are governed by Section 8, subsections (b) and (c), of the Act of May 20, 1937, P. L. 728, as amended, 72 P.S. §4651-8(b), (c). Those subsections read as follows:

"(b)   Within thirty (30) days after dismissing the claim or making an award, any party aggrieved thereby, including the Commonwealth, shall have a right of appeal therefrom. Such appeal shall be taken to the Court of Common Pleas of Dauphin County.[2] Parties

---

alarm system. In June of 1968, McShain sent to the Authority's architect catalogue data for a Detex Alarm System, indicating that wire and installation of wire were to be included under the electrical contract. The architect crossed out the word "Electrical" and wrote in the word "General" before the word "Contract." He then stamped the catalogue data "Approved" and returned it to McShain. McShain apparently saw the approval stamp but not the penned change from "Electrical" to "General" and the difference of opinion remained the same as before the admission of the catalogue data to the architect.

[2] Section 508(a)(51) of the "Appellate Court Jurisdiction Act of 1970," Act of July 31, 1970, P. L. 673, 17 P.S. §211.508(a)(51), provided that the jurisdiction of the court named in this section is transferred to and vested in the Commonwealth Court and that this section is "repealed insofar as inconsistent with such transfer."

interested in such an order including the Common-
wealth, jointly, severally or otherwise, may join in an
appeal therefrom even though all of the interested par-
ties do not join therein.

"(c) The court shall hear the appeal without a
jury on the record certified by the board. After hear-
ing the court shall affirm the order unless it shall find
that the same is not in accordance with law. The find-
ings of the board as to the facts, if supported by sub-
stantial evidence, shall be conclusive. If the order is not
affirmed the court may set aside or modify, in whole or
in part, or may remand the proceeding to the board for
further disposition in accordance with the order of the
court." (Footnote added.)

Our scope of review is limited by the provisions of
Section 8(c), and we must affirm the order unless it
was not in accordance with law or there is an absence
of substantial evidence to support the findings of the
Board as to the facts. Substantial evidence means such
relevant evidence as a reasonable mind might accept as
adequate to support a conclusion. *A. P. Weaver and
Sons v. Sanitary Water Board,* 3 Pa. Commonwealth
Ct. 499, 284 A. 2d 515 (1971). After carefully reading
the entire record, we conclude that the findings of fact
made by the Board of Arbitration of Claims are sup-
ported by substantial evidence.

Was the order of the Board of Arbitration of Claims
in accordance with law? We think that it was. Courts
must interpret contracts as written. *Peter J. Mascaro
Co. v. Milonas,* 401 Pa. 632, 166 A. 2d 15 (1960). A
court cannot disregard a provision in a contract if a
reasonable meaning can be ascertained therefrom. In
construing a contract each and every part of it must
be taken into consideration and given effect, if possible,
and the intention of the parties must be ascertained
from the entire instrument. *Giuliani Construction Co.,*

*Inc. v. School District of Philadelphia,* 207 Pa. Superior
Ct. 498, 217 A. 2d 793 (1966).

The contract between McShain and the Authority
provided for a Detex Alarm System and we believe that
it is reasonable to conclude that this system was in-
tended by the parties to be installed in an operable
condition. The limited interpretation urged upon us by
McShain would result in an unconnected alarm system
which would be useless for the purpose for which it was
designed.

We think that the portion of Section 10C-22 which
specified that the alarm system should include "multi-
ple signal capability consisting of lights and buzzers at
central station panelboard, operating on low voltage
supervised lines to each monitored door through DC
power supply and plug in type relays" clearly expressed
the obligation to provide the electrical wiring necessary
to make the alarm system operable. Our conclusion is
further supported by Paragraph 17 of Section III of
the contract which, *inter alia,* provides that "[s]hould
any incidental work or materials be necessary for the
proper carrying out of the intent of the specifications
or plans, either directly or indirectly, [McShain] agrees
to perform all such work and furnish and install all
such materials as if the same were fully specified."

We think that it is of some importance that the
alarm system was referred to only in the general con-
tractor's specifications and contract and the electrical
contract was totally silent in regard to the alarm sys-
tem. This fact was or should have been known to Mc-
Shain.

In the absence of any ambiguity in a contract, we
cannot give consideration to the practical construction
of the contract as suggested by usual practice or cus-
tom. Although wiring is normally a part of the re-
sponsibility of the electrical contractor, the contract

here provided otherwise in regard to the Detex Alarm System and placed that obligation upon McShain.

Order affirmed.

Judge ROGERS dissents in this opinion.

---

DISSENTING OPINION BY JUDGE WILKINSON:

I respectfully dissent.

Normally, I would not dissent where I am in the minority on the interpretation of a contract, but when the majority opinion is based on the fact that there is no ambiguity in this contract, I must affirmatively note my disagreement. This circular reasoning is pressed to its "logical conclusion" when the majority concludes that, while normally wiring is done by the electrical contractor, this contract provided otherwise. Certainly the question here is: Did it provide otherwise? Practice and custom are most relevant in deciding this question.

Of course, if there is no ambiguity, there is no problem. However, since I feel that there is an ambiguity, then it should be resolved against the party that prepared the contract, i.e., the Authority. See *Consolidated Tile and Slate Co. v. Fox*, 410 Pa. 336, 189 A. 2d 228 (1963). The following is the testimony of the electrical engineer in charge of this project for the Authority's architect: "Q. Isn't it safe to say that normally in those GSA contracts the wiring of the Detex Alarm System was normally done by the electrical contractor? A. They are not necessarily normal to have Detex Alarm Systems. Q. Did you work on any projects where Detex Alarm Systems were installed at or about that time? A. Not at that time. Q. Have you worked on any Detex Alarm Systems since that time? A. Yes. Q. Who normally does the electrical work? MR. WAINSTEIN: I will object to that, sir. BY THE CHAIRMAN: Q. Well on the jobs you worked with, since that time, where Detex Alarm Systems were involved, what specs do you write with regard to that? A. Included in the electrical specs.

You only get burned once. Included in the electrical specifications. BY MR. BOLDEN: Q. But it is safe to say it is normally an electrical contractor's function? A. Normally."

There can be no doubt that McShain honestly believed this wiring should be performed by an electrical contractor, for when required to do the wiring, under protest, he engaged an electrical contractor to do it. Indeed, although not raised in the briefs or on argument, it would appear to me that to require or even permit the general contractor to do this wiring might be in violation of the Act of May 1, 1913, P. L. 155, Section 1, as amended, 71 P.S. §1618, which provides: "Hereafter in the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed one thousand five hundred dollars, it shall be the duty of the architect, engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction or alteration of such public buildings and to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches."

I am not impressed by the argument that the Detex Alarm System would be useless for the purpose for which it was designed unless it was wired and, therefore, it was the duty of McShain to wire it. The entire structure built by McShain would be useless to the Authority if it were not wired electrically, but this does not mean that McShain does the electrical work.

The majority, in a footnote, points out that McShain sent a communication to the Authority's architect, setting forth that the Detex Alarm System would be wired

by the electrical contractor, and setting forth the many other details of the installation. The architect crossed out the word "electrical" and substituted the word "general" and marked the communication "approved." What the majority fails to point out is that the stamp used to note the architect's approval or disapproval had a block to indicate "approved as corrected." This was not marked but rather only the block "approved" was marked. It seems clear to me that such an action on the part of the Authority's architect actively misled McShain, since only one word was changed in an eight-page document and then it was indicated that no change had been made.

Finally, and most important as a precedent, I do not see how Paragraph 17, Section III, of the General Conditions of Contract, No. G.S.A. 1104-10.1, quoted in the majority, can be used to require the general contractor, McShain, to do work that was in error omitted from the electrical contractor's specifications and drawings. Since the wiring did not appear in any drawings or specifications, it could only be brought under Paragraph 17 of Section III, by designating it as "incidental work." Incidental indeed! It was so distinct and separate that McShain had to obtain additional plans and specifications from the architect and engaged an independent electrical contractor to do the work.

I dissent.

---

DISSENTING OPINION BY JUDGE BLATT:

I respectfully dissent.

"When interpreting a contract the intention of the parties must be determined, and in ascertaining that intention effect must be given to all the provisions of the contract. . . . In a written contract the intent of the parties is the writing itself and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement."

*Robert F. Felte, Inc. v. White,* 451 Pa. 137, 143, 302 A. 2d 347, 351 (1973). The language of the contract here involved clearly indicates, in my opinion, that the intent of the parties thereto was that John McShain, Inc. (McShain) should not be responsible for installing the electrical wiring of the Detex Alarm System.

The only mention of the alarm system is under that section of the contract entitled "Finishing Hardware." There is nothing in this section which concerns anything in addition to the hardware, and McShain did in fact furnish and install all of the finishing hardware for the alarm system. In addition, Section 1A.1(c)(2) of McShain's contract provides that it would not include electrical construction, which would be done under a separate contract.

Admittedly, of course, the General State Authority (GSA) failed to include the wiring for the alarm system in its contract with the electrical contractor, but this does not affect the fact that its contract with McShain on its face clearly indicates the intent of the parties to be that McShain would install the finishing hardware for the alarm system and that all electrical construction, including, presumably, the wiring for the alarm system, would be done by the electrical contractor. When the contract is clear and unambiguous on its face, as it is here, extrinsic circumstances such as the failure of the GSA to make any other provision for certain wiring should not be considered.

The majority puts great weight on Paragraph 17, Section III, of the General Conditions of Contract No. G.S.A. 1104-10.1, but that paragraph seems to me to be clearly intended to cover only minor or incidental changes in the specifications or drawings which could not have been foreseen when the contract was entered into and which are normally expected in any large construction job. It certainly could not have been intended to authorize the GSA to require a contract alteration,

especially where, as here, such alteration would be totally inconsistent with the normal and accepted division of duties between a general contractor and an electrical contractor.

McShain should not be penalized for the obvious failure of the GSA to make specific provisions for the electrical wiring of the alarm system either in its contract with him or in its contract with the electrical contractor.