Penn-Jersey Contractors, Inc., Appellant, *v.* Commonwealth of Pennsylvania, The General State Authority, Appellee.

204

Argued December 3, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Frank L. White, Jr.,* with him *Duane, Morris & Heckscher,* for appellant.

*John A. Alogna,* Assistant Counsel, with him *Richard D. Holahan,* Assistant General Counsel, and *Michael A. Madar,* General Counsel, for appellee.

OPINION BY JUDGE KRAMER, March 6, 1974:

This is an appeal filed by Penn-Jersey Contractors, Inc. (Penn-Jersey) from an adjudication of the Board

of Arbitration of Claims (Board) making an award in part on certain claims made by Penn-Jersey against the General State Authority (GSA).

Even a cursory review of the record made in this case by one not directly and intimately involved in this rather typical governmental construction project permits one to wonder how a contractor bids on construction for such a project, and how any such project is ever completed without a multiplicity of lawsuits. Typically, the parties to this case, subsequent to the acceptance of Penn-Jersey's bid, were faced with unanticipated variances which led to typical disputes, e.g., admitted changed site conditions, extras, architectural and engineering changes in design, other contractors prematurely completing work, labor disputes, misunderstandings between inspectors and performers, municipal governmental interference, landowner's (West Chester State Teachers College) objections, bankruptcy of another contractor, misunderstandings arising out of very technical and complicated specifications and agreements, and even acts of God in the form of precipitation causing impassable mud-filled roadways. It is rather remarkable that in the present posture of this case we are faced only with the few issues presented.

On April 16, 1969, Penn-Jersey submitted a $169,-000 bid to GSA for the installation of certain underground plumbing utilities on a construction project involving new athletic facilities at the West Chester State Teachers College. Penn-Jersey's bid was based upon not only the specifications and the proposed agreement, but also upon a prior view or examination of the site conditions. On May 6, 1969, GSA declared Penn-Jersey the low and successful bidder, and awarded a contract to it. As part of the instructions to bidders, Penn-Jersey was given the responsibility of a "careful personal examination of the site to satisfy himself as

to the nature and location of the work, the conformation of the ground, the soil and rock conditions, and the character, quality and quantity of the materials which will be required." Penn-Jersey was also notified that it assumed "all risks resulting from any changes in the conditions which may occur during the progress of the work." The record indicates that at the time of the view or examination of the site prior to the bid, the president of Penn-Jersey observed that other contractors' work was already in progress. The agreement itself is dated May 7, 1969, and about a week later, the president of Penn-Jersey again visited the construction site where he observed, from his point of view, a substantial change in the site conditions, which obviously would increase the cost of Penn-Jersey's performing its contract. It notified the officials of GSA and after a series of meetings, GSA by a letter dated June 19, 1969, directed Penn-Jersey to proceed immediately with all work encompassed within the agreement and acknowledged the changed site conditions. Because of its pertinence to this opinion, we quote two paragraphs from that letter.

"The Authority, by virtue of this special meeting, does recognize, under the terms of contract, 414-28's claim of changed conditions on site. This claim falls into two categories; one being a loss in production efficiency, and the other restoration of finished surfaces. The first category will stand for arbitration. The second (restoration) will be contingent on review of the unit costs and subsequent direction to be issued.

"Any comments or clarification concerning this directive will be accepted; however, work on both 414-28 and 414-32 is to proceed immediately, with proper coordination and no further delay."

The work did proceed on the project and Penn-Jersey completed same. During the course of the performance twelve change orders were issued by GSA to

compensate Penn-Jersey for additional work. Some question was raised in the record, and never answered, whether any or all of these change orders were intended to cover all or part of the additional work caused by the changed condition of the site. In any event, Penn-Jersey admitted in the record that it had been fully paid for all of the change orders requested or contemplated during construction. The final acceptance of Penn-Jersey's work was made by GSA on December 16, 1970. On June 14, 1971 (5 months and 29 days after the date of final acceptance) Penn-Jersey filed its statement of claim with the Board. In its statement, it sought to recover $21,752.93 which it alleged was due it for increased costs caused by the changed site conditions and for additional costs for additional work authorized but unpaid by GSA. After a full hearing on this matter, the Board issued its adjudication wherein Penn-Jersey's claims were awarded with the exception of (1) $14,500 claimed to be due as a result of an increase caused by a subcontractor of Penn-Jersey refusing to honor its bid necessitating the selection of another subcontractor under an agreement which increased Penn-Jersey's costs by this amount claimed; and (2) $400 representing a claim for an amount which Penn-Jersey paid to a subcontractor under its agreement with the subcontractor for a $200 per day penalty for roadway access denial to the job site. In addition there were three other claims which were denied from which Penn-Jersey has not taken an appeal to this Court. The total denials amounted to $19,909.77.

After Penn-Jersey appealed to this Court, GSA filed a motion to quash alleging the Board was without jurisdiction over the subject matter because Penn-Jersey had not made its claim within the six months statutory period. The pertinent provisions of the statute involved are found in the Act of May 20, 1937 (1937 Act),

P. L. 728, No. 193, as amended, 72 P.S. §4651-6 which reads as follows: "The board shall have no power and exercise no jurisdiction over a claim asserted against the Commonweatlh unless the claim shall have been filed within six months after it accrued. . . ." Initially GSA contends, not very convincingly, that the claim accrued on the first day Penn-Jersey became aware of the changed site condition (about May 19, 1969), but we dismiss this contention out-of-hand for it is obvious that on that date Penn-Jersey had no knowledge on what GSA's position would ultimately be. GSA next argues that, at the very latest, its letter of June 19, 1969, quoted above, notified Penn-Jersey that it would be paid for its claims for additional costs caused by the changed site conditions, but that its claim for loss of production efficiency was therein denied and would have to be arbitrated. This leads GSA to its conclusion that Penn-Jersey should have filed its claim with the Board, at the latest, within six months after June 19, 1969. This same matter was mentioned by counsel for the GSA at the end of the hearing before the Board. However, counsel for GSA withdrew its contention because Penn-Jersey had filed its claim with the Board within six months (actually five months 29 days) of the date of final acceptance. In other words, counsel for GSA before the Board in effect acknowledged that Penn-Jersey's claim accrued after the December 16, 1970 final acceptance. GSA, in this appeal, now changes its position and states that Section 6 of the Act quoted above is in effect a statute of repose operating as a limitation on liability rather than a statute of limitation which operates as a limitation of remedy. Our very careful review of this entire record, including especially the letter of June 19, 1969, permits us to conclude that the parties intended this claim to accrue, and thereby become subject to arbitration, when the amount of the claim for the loss in

production efficiency could be determined, i.e., on the date of final acceptance. This Court in *Allen N. Lashner, Inc. v. Commonwealth of Pennsylvania, Department of Highways*, 1 Pa. Commonwealth Ct. 486, 489, 275 A. 2d 403, 405 (1971) stated, with reference to this very section of the Act: "Under Section 6 of the Act of 1937 the jurisdictional period begins to run from the time the cause of action accrues; that is, from the time when the injured party is first able to litigate his claim." Under the facts of this case, although it may be said that Penn-Jersey was on notice that it would have to arbitrate, on June 19, 1969, Penn-Jersey did not know the full extent of what that claim would be on that date.

At one point in its brief, on another matter, GSA argues bitterly that Penn-Jersey did not submit sufficient notice in writing as required by Section 6 setting forth in detail the specifications of its claim. That pertinent portion of Schedule 6, 72 P.S. §4651-6 states: "The claimants shall advise the department involved, in writing, of such claim, specifying the details thereof, and shall, within the same period, file with the secretary of the board a concise and specific written statement of this claim, signed and verified by the claimant before an officer authorized to administer oaths." Because this record permits us to conclude that on May 19, 1969 (the date Penn-Jersey notified GSA of the changed site conditions) and on June 19, 1969 (the date of the GSA letter quoted above), Penn-Jersey could not fulfill the detailed statement of claim requirements of Section 6, we hold that Penn-Jersey's claim did not accrue until such a detailed statement could be prepared. Under the facts of this case, that date was December 16, 1970. We will therefore at the end hereof dismiss the Motion to Quash.

In its appeal to this Court, Penn-Jersey contends that the Board erred in denying its claim in the amount

of $14,500 for the additional cost it experienced when it obtained a second subcontractor following the refusal of the intended first subcontractor to enter into an agreement as bid. Our scope of review is limited by the provisions of Section 8(c) of the Act of 1937, 72 P.S. §4651-8(c) wherein it is stated: "The court shall hear the appeal without a jury on the record certified by the board. After hearing, the court shall affirm the order unless it shall find that the same is not in accordance with law. The findings of the board as to the facts, if supported by substantial evidence, shall be conclusive. If the order is not affirmed, the court may set aside or modify, in whole or in part, or may remand the proceeding to the board for further disposition in accordance with the order of the court." In *John McShain, Inc. v. General State Authority*, 9 Pa. Commonwealth Ct. 427, 307 A. 2d 469 (1973), we defined our scope of review in this type of case as follows: "Our scope of review is limited by the provisions of Section 8(c), and we must affirm the order unless it was not in accordance with law or there is an absence of substantial evidence to support the findings of the Board as to the facts. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 9 Pa. Commonwealth Ct. at 431, 307 A. 2d at 472. The Board in this case stated that it was not satisfied with the proof presented by Penn-Jersey with regard to the $14,500 claim. The Board found that Penn-Jersey's unsupported testimony was not sufficient evidence to support a conclusion that it was the change in conditions which caused the first subcontractor to refuse to finalize its original bid. Therefore the Board concluded that Penn-Jersey had failed to meet its burden of proof on the $14,500 claim. We agree that there is insufficient evidence in the record to support a finding that the original contractor refused to perform because of

the job site conditions or that the second contractor's agreed price was higher than the original because of the change in job site conditions. Both the findings and conclusions of the Board are reasonable and we must affirm them.

The last contention of Penn-Jersey is that the Board erred in not making an award in the amount of $400, which claim is based upon that amount being assessed against Penn-Jersey by a subcontractor for two days delay caused by nonaccess to a roadway to the job site. The Board denied this claim based upon paragraph 72 of GSA's agreement with Penn-Jersey, which in pertinent part states: "72. No claims for increased costs, charges, expenses, or damages of any kind, shall be made by the Contractor [Penn-Jersey] against The General State Authority for any delays or hindrances from any cause whatsoever, including strikes, walkouts or work stoppages during the progress of any portion of the work. . . ." Penn-Jersey's argument here is that GSA assumed the work of a defaulting contractor and in performing that work, blocked access to the sole access road to a job site for one of Penn-Jersey's subcontractors for two days, thereby making GSA liable as a contractor. Initially it must be noted that the burden was on Penn-Jersey to prove its claim. While it is true that paragraph 24 of the general conditions of the agreement between GSA and Penn-Jersey provides, "The Authority shall provide all land upon which the work is to be done with right of access thereto . . .," our review of this record permits us to conclude that Penn-Jersey did not meet its burden. Penn-Jersey's proof on this claim merely indicates that there were two days of nonaccess to the job site. There is nothing in the record to indicate the basis for the two days delay except for GSA's testimony that the reason for the delay was mud caused by rains. Penn-Jersey proved that it paid $400 to its subcontractor for

212

two days' delay under the provisions of an agreement which Penn-Jersey had with its subcontractor. This subcontractor's agreement was never approved by GSA. It would be unconscionable to bind GSA to provisions (over which GSA had no control) in an agreement between the contractor and his subcontractors providing for unreasonable penalties far in excess of any actual loss to the subcontractor.

As directed by Section 8 of the 1937 Act, we affirm the order of the Board as being in accordance with the law.

### ORDER

AND NOW, this 6th day of March, 1974, it is ordered that the Order of the Board of Arbitration of Claims be and hereby is affirmed, and the Motion to Quash filed by the General State Authority be and hereby is dismissed.