Commonwealth of Pennsylvania, Department of Public Welfare, Petitioner, *v.* UEC, Inc., Respondent.

Argued March 3, 1975, before President Judge BOW-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Lawrence Silver,* Deputy Attorney General, with him *Allen C. Warshaw,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for petitioner.

*A. Martin Herring,* with him *Ronald Wertheim, Meyer Feldman* and, of counsel, *Ginsberg, Feldman and Bress* and *Teitelman and Herring,* for respondent.

OPINION BY JUDGE MENCER, June 4, 1975:

This is an appeal by the Commonwealth of Pennsylvania, Department of Public Welfare (Commonwealth), from a decision of the Board of Arbitration and Claims (Board) dismissing the Commonwealth's preliminary objections to a complaint filed by UEC, Inc. (UEC).

Of course, in deciding the efficacy of the Commonwealth's preliminary objections, we must accept as true all facts in UEC's complaint which are well and clearly pleaded and all inferences reasonaby deductible therefrom. *Bruhin v. Commonwealth,* 14 Pa. Commonwealth Ct. 300, 320 A. 2d 907 (1974). Therefore, we will set forth the relevant facts of this case as revealed by our examination of UEC's complaint, which consists of two causes of action alleging breaches of both a written contract and an oral contract.

On June 15, 1970, the Commonwealth and UEC entered into a written contract whereby UEC was to receive compensation for providing program design and development, staff training, and management for a system of model day care centers. The term of the contract was to run from June 15, 1970 to June 14, 1971 and thereafter from year to year, subject to cancellation by either party on sixty days' written notice. On April 14,

1971, the Commonwealth sent a telegram to UEC purporting to constitute written notice of the cancellation of the contract. Thereafter, the Commonwealth, through its agents, informed UEC that contract extension negotiations were reopened. There then followed negotiations and several meetings between the parties on the subject of extending the contract, until October 14, 1971, when the Commonwealth verbally informed UEC for the first time since its telegram of April 14, 1971 that it would not extend the contract. UEC then terminated all operations under the contract.[1]

Subsequent to October 14, 1971, the Commonwealth, through its agents, continued to assure UEC that it intended to pay the balance due plaintiff under the contract. Because there was a disagreement as to the amount of the balance owing to UEC, the Commonwealth, acting through its agents, the Secretary of Public Welfare, Helene Wohlgemuth, and the General Counsel of the Department of Public Welfare, Marx S. Leopold, entered into an oral agreement with UEC on or about January 18, 1972, in which the Commonwealth promised to pay, and UEC promised to accept, in compromise and settlement of the disputed amount owing to UEC, an amount to be determined on a quantum meruit basis through an audit of UEC's performance to be conducted by the United States Department of Health, Education and Welfare (HEW) at the request of the Commonwealth.

Pursuant to this agreement, the Commonwealth, by letter dated March 21, 1972, requested HEW to establish a monetary value for the services furnished by UEC, specifying that HEW only consider the value of these services on a quantum meruit basis. HEW conducted an audit during the period of March 21, 1972 to November 22, 1972 and reached a conclusion that the total value of

---

1.  UEC had maintained its operations, although at a lower level, during the six months of negotiations from April 14, 1971 until October 14, 1971.

the services rendered by UEC was $2,559,671. The Commonwealth was informed of the HEW determination on or about November 9, 1972 but has failed to compensate UEC for the balance owing as determined by the HEW audit.

UEC's complaint alleging all of the above facts was filed with the Board on May 2, 1973. The Commonwealth then filed preliminary objections claiming, *inter alia,* that the Board was without jurisdiction because UEC did not file its complaint within six months of the time that its alleged claims accrued. As to UEC's claim under the *written agreement,* we must agree with the Commonwealth's contention. Therefore, we conclude that the Commonwealth's preliminary objections to that cause of action should be sustained.

Section 6 of the Act of May 20, 1937, P. L. 728, No. 193, *as amended,* 72 P.S. §4651—6, reads in pertinent part as follows:

> "The board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued."

This section has been interpreted to mean that the jurisdictional period begins to run from the time when the injured party is first able to litigate his claim. *Penn-Jersey Contractors, Inc. v. The General State Authority,* 12 Pa. Commonwealth Ct. 203, 315 A. 2d 920 (1974).

The question then becomes: At what date did UEC's claim for breach of the written contract become ripe for litigation? We find that the latest possible date on which UEC was first able to sue for damages arising from its written contract with the Commonwealth was October 14, 1971. This was the day when the Commonwealth informed UEC that it would not extend the contract and the date on which UEC then ceased operations under the contract. Of course, this date is more than six months prior to the filing of UEC's complaint with the Board on May 2, 1973.

UEC contends that its claim did not accrue until January 3, 1973, at which time the Commonwealth first advised UEC that it would not pay UEC in accordance with the audit conducted by HEW. Underlying this contention is the premise that, until this time, UEC could not have filed its claim for payment because of the agreement to establish the amount due through the HEW audit; consequently, there was no claim until the audit was completed.

UEC cites two cases in support of this argument. Our careful reading of these cases convinces us that they do not support UEC's position because they are factually distinguishable.

*Penn-Jersey Contractors, Inc., supra,* construed a *preperformance* letter between the parties as evidence that the parties intended the claim to accrue when the amount of the claim could be determined; *i.e.,* after performance. This Court held that under the facts of *Penn-Jersey* the claim did not accrue until the claimant knew the full extent of his claim. In the present case, there was no such *preperformance* agreement between the parties. Moreover, UEC knew the full extent of its claim when it ceased operations under the contract shortly after October 14, 1971. The oral agreement *subsequently* entered into for the HEW audit was simply an attempt to settle UEC's claim. This agreement did not alter the fact that a known claim existed on October 14, 1971, *prior* to, and completely independent of, this agreement.

*Allen N. Lashner, Inc. v. Department of Highways,* 1 Pa. Commonwealth Ct. 486, 275 A.2d 403 (1971), involved a *preperformance* specification in the contract between the parties evidencing their intent to consider a certain date as the accrual date of any cause of action under the contract. As mentioned above, there was no such preperformance agreement in the present case.

In short, we find that UEC's claim accrued on October 14, 1971, upon its termination of performance under the contract. On that date all work terminated and all expenses attributable to performance under the contract were determinable. UEC was therefore able to litigate its claim on this date. Any subsequent agreement as to settling this claim could in no way alter the fact that the claim existed on October 14, 1971. Since UEC's claim was not filed with the Board until eighteen months later, it is clear that the Board has no jurisdiction over this claim.

There remains for our consideration UEC's cause of action on the *oral* agreement to settle its claim under the written contract for an amount to be determined by the HEW audit. Initially, we find that the Board does have jurisdiction over this claim since it could not have accrued before November 9, 1972, the date on which the Commonwealth was first informed of the result of the HEW audit. UEC surely could not have known the amount of its claim until it received the result of the audit. The filing of this claim with the Board on May 2, 1973 was within a six-month period; therefore, the Board has jurisdiction.

Although UEC's claim passes the jurisdictional hurdle, it is also confronted by the Commonwealth's demurrer for failure to state a cause of action upon which relief can be granted. This demurrer is based on the Commonwealth's contention that, as a matter of law, its agents, Secretary Wohlgemuth and General Counsel Leopold lacked the authority to bind the Commonwealth to an oral agreement compromising claims. We must agree.

Section 512 of The Administrative Code of 1929, Act of April 9, 1929, P. L. 177, *as amended*, 71 P.S. §192 (Supp. 1974-75), in pertinent part provides: "[W]hen any legal difficulty or dispute arises ... in which any department ... is concerned, ... it shall be the duty of such

department ... to refer the same to the Department of Justice."

Here the written contract between the Commonwealth and UEC[2] had terminated as of June 15, 1971, and a dispute existed as to whether UEC had fully performed its obligations under the provisions of the written contract and how much money was due and owing to UEC by the Commonwealth as a consequence of the written contract. This dispute was not referred to the Department of Justice by Secretary Wohlgemuth, as she was obligated to do by Section 512 of The Administrative Code of 1929 but rather, without authority, she entered into an oral agreement with UEC to resolve the dispute by requesting HEW to conduct an audit of UEC performance under the written contract and to pay UEC an amount to be set by HEW on a quantum meruit basis. The audit was performed and $2,559,671 was determined by HEW to be the amount of money due UEC. The Department of Public Welfare refused to honor Secretary Wohlgemuth's oral promise to be bound by the HEW audit and UEC was not paid.[3]

We reluctantly conclude that UEC cannot, under the circumstances here, enforce the oral agreement entered into with Secretary Wohlgemuth by a claim to the Board. See *Commonwealth v. Seagram Distillers Corporation,* 379 Pa. 411, 109 A. 2d 184 (1954).[4]

---

2. Commonwealth had the authority to enter into this written contract with UEC by virtue of the provisions of Section 206 of the Public Welfare Code, Act of June 13, 1967, P. L. 31, *as amended,* 62 P.S. §206.

3. Certainly the Department of Public Welfare has a moral obligation to pay to UEC that amount which the Commonwealth by its own determination contends is the correct amount due and owing under the terms of the written contract.

4. It is sad, but true, that persons contracting with the Commonwealth must know the extent of the authority of the officer purporting to act for the Commonwealth. Those lacking such knowledge contract at their peril.

Therefore, for the above reasons, we enter the following

ORDER

Now, this 4th day of June, 1975, the appeal of the Commonwealth of Pennsylvania, Department of Public Welfare, is sustained, and its preliminary objections to UEC, Inc.'s complaint are hereby sustained, and the complaint is hereby dismissed.

————

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent.

UEC, Inc. has performed services for the Commonweath of Pennsylvania valued in excess of $2,500,000, which the majority holds that it may not now recover because it did not timely file a claim with the Board of Arbitration of Claims although (1) competent officers of the Commonwealth, including the Secretary of Welfare, acknowledged the indebtedness and assured UEC of payment, (2) the same officers agreed with UEC that the amount payable, which was in dispute, should be determined by the U. S. Department of Health and Welfare, after audit, (3) UEC filed its claim within six months from the date of HEW's determination of the amount due, and (4) the Commonwealth simply repudiated the agreement after the amount due was determined as it had agreed. It is important to point out that UEC's claim is for services performed during a six months period of negotiations with the Commonwealth for an extension of a written contract after the Commonwealth had sent a notice of termination, and that four of the six months postdated the termination of the written contract.

The parties, in my view of the matter, clearly entered into at least three contracts: First, the written contract of June 15, 1970 which the Commonwealth terminated as of June 14, 1971; second, an oral implied contract for UEC's services, rendered and accepted after June 14,

1971 and until October 14, 1971; and third, an oral express contract that the disputed amount due by the Commonwealth to UEC would be determined by HEW after an audit. The last contract was entered into on January 18, 1972. It was supported by consideration, UEC giving up its right to receive an amount claimed in excess of that to be determined to be due by HEW, and the Commonwealth relinquishing its right to pay less. This contract plainly contained a precondition to the accrual of a right to file a claim—the ascertainment by HEW of the amount, if any, due. This was not accomplished until November 9, 1972. The case therefore clearly falls within the principle of *Penn Jersey Contractors, Inc. v. The General State Authority,* 12 Pa. Commonwealth Ct. 203, 315 A.2d 920 (1974); *Lashner, Inc. v. Commonwealth Department of Highways,* 1 Pa. Commonwealth Ct. 486, 275 A.2d 403 (1971), that where the parties intend that the claim should accrue when its amount is determined, such claim is timely made if filed within six months from the determination.

Judge KRAMER joins in this dissent.