County of Montgomery, Petitioner *v.* Commonwealth of Pennsylvania, Department of Commerce, Respondent.

Argued April 10, 1981, before Judges ROGERS, CRAIG and PALLADINO, sitting as a panel of three.

*Rudolph A. Chillemi,* for petitioner.

*John H. Cuthbertson,* with him *Julianne J. Zekan,* Assistant Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, September 23, 1981:

This is an appeal from a decision and order of the Board of Arbitration of Claims (Board) which awarded judgment against the plaintiff, Montgomery County, and in favor of the defendant, the Pennsylvania Department of Commerce (Department), in an action in assumpsit. We affirm.

In 1976, the Delaware Valley Regional Planning Commission (DVRPC), a bi-state planning agency, constructed an experimental radio broadcasting system known as the Bicentennial Highway Advisory Radio (BHAR) system to provide motorists traveling to and from Bicentennial activities in the Philadelphia metropolitan area with information about traffic and parking conditions, special activities, and other necessary emergency information.[1] Lacking the funds necessary to operate this system, the DVRPC's directors decided early in 1976 to seek an operating grant from the Department's Bicentennial Community Services Office (Office) pursuant to the provisions of Act 50-A,[2] an appropriations statute, in which the General Assembly appropriated $10,000,000 to the

_____

[1] This information was broadcast over low power cable radio transmitters that were placed adjacent to major traffic arteries leading into Philadelphia.

[2] Act of December 16, 1975, P.L. 744.

22

Department "[f]or the payment to municipalities of matching grants for 50% of the costs and expenses incurred by municipalities for [*inter alia*] . . . traffic control, necessary to accomodate Bicentennial activities." Since this grant, if received, would only cover half the costs of operating the BHAR system, the DVRPC also sought out, and obtained, a letter of intent from the Atlantic Richfield Company (ARCO) in which ARCO agreed to contribute helicopter traffic surveillance services valued at $40,000 to the BHAR system project if the project received funding from the state.

In March of 1976, Ernest Brizell, the DVRPC's senior transportation engineer, contacted the Office to submit the DVRPC's grant application, and was informed that the DVRPC could not directly apply for a grant since such grants were only distributed to "municipalities"; a term which the applicable Department regulation defines as any "county, city, borough, township, or incorporated town located within the boundaries of the Commonwealth." 13 Pa. Code §51.1. To "solve" this problem, the DVRPC subsequently persuaded Montgomery County to file its own grant application for funding for the BHAR system. This application was eventually approved by the Office, and on July 28, 1976, Montgomery County and the Department executed a Bicentennial Community Services Grant Agreement (Agreement) in which Montgomery County agreed to operate the BHAR system through June 30, 1977, in return for reimbursement of 50% of actual expenditures. The following day, Montgomery County and the DVRPC executed a subcontracting agreement in which the DVRPC agreed to (1) operate the BHAR system and (2) supply Montgomery County with "matching funds" in the form of donated helicopter traffic surveillance services in return for Montgomery County's promise to reimburse

invoiced expenses "within ten (10) days after receipt of funds covering the respective invoice from the DE-PARTMENT."

In the coming months, the DVRPC operated the BHAR system and forwarded invoices to Montgomery County, including invoices for donated helicopter services, as expenses were incurred. In January of 1977, Montgomery County, in turn, began to forward DVRPC's invoices to the Department for partial reimbursement. Since the value of the invoices for donated helicopter services equaled or exceeded the value of invoices for actual cash expenditures, Montgomery County and the DVRPC expected to receive full reimbursement for actual cash expenditures. By a letter dated June 24, 1977, however, the Department informed Montgomery County that it did not consider any of the submitted invoices to be reimbursable under the terms of the Agreement since, *inter alia,* the invoiced expenses in question had been incurred by the DVRPC and not Montgomery County.[3] In response to the Department's refusal to reimburse the submitted invoices, Montgomery County subsequently filed a complaint in assumpsit with the Board alleging that it was entitled under the terms of the Agreement to reimbursements totaling $39,956. In its answer to this complaint, the Department noted that under Section 2 of the Agreement Montgomery County was only entitled to reimbursement upon the submission of invoices showing that performance had taken place "in accordance with this Agreement, and following the schedule and conditions set forth in Addendum 'A' attached hereto." Addendum "A" in turn is the grant application form Montgomery County filed with the

---

[3] The Department also alleged in this letter that Montgomery County had failed to submit quarterly progress reports in violation of the terms of the Agreement and that the BHAR system had not functioned properly.

Department which, *inter alia,* has the Department's regulations governing the distribution of Bicentennial grant funds[4] (bicentennial regulations) printed on it. Section 51.2(1) of the bicentennial regulations provides as follows:

> No reimbursement shall be made to any municipality until the municipality has actually expended its own funds for reimbursable costs and expenses.

Before the Board, the Department alleged that this regulation prevented Montgomery County from receiving reimbursement since no county funds had been expended for BHAR system expenses. The Department also noted that since this regulation had been incorporated into the Agreement, Montgomery County was also not entitled to reimbursement pursuant to the express terms of the Agreement. Montgomery County, in turn, alleged (1) that the DVRPC invoices it had submitted represented accrued expenses[5] and (2) that the regulation noted above either permitted a municipality to receive reimbursement for accrued expenses, or in the alternative was invalid if it did not do so. Mr. Brizell, and Curtis Campman, the Coordinator of Public Facilities for Montgomery County also testified before the Board that Susan Gahres, the Executive Director of the Office, had been aware that Montgomery County only intended to act as a "pass through" for grant funds for the DVRPC, and that she had in fact encouraged Montgomery County to file its grant application with this knowledge.

---

[4] 13 Pa. Code §§51.1-51.11.

[5] Although Montgomery County consistently alleged in the proceedings below that the DVRPC invoices it submitted to the Department represented accrued expenses since Montgomery County was contractually obligated to reimburse the DVRPC for BHAR system expenditures, we note, without deciding, that the Agreement between Montgomery County and the DVRPC only calls for reimbursement if Montgomery County receives grant funds from the state.

On May 9, 1980, the Board issued an opinion and order awarding judgment against Montgomery County and in favor of the Department. In its opinion, the Board noted that it did not have to decide the question of whether or not Act 50-A permitted municipalities to receive reimbursement for accrued expenses since the terms of the Agreement clearly and unambiguously required Montgomery County to actually expend its own funds as a precondition to receiving reimbursement, and since it was undisputed that Montgomery County did not actually expend any county funds for BHAR system expenses. The Board also noted in its opinion, in dicta, that donated helicopter services were not reimbursable under the provisions of paragraph 4(c) of the Agreement, and that Montgomery County had not submitted quarterly progress reports as it was required to do under the provisions of paragraph 4(a) of the Agreement. Finally, the Board concluded that evidence of precontract discussions with Susan Gahres was not admissable for the purpose of altering the express terms of the Agreement. The present appeal followed.

Before this Court, Montgomery County alleges, *inter alia,* (1) that Act 50-A permits municipalities to receive reimbursement for accrued expenses, (2) that Section 51.2 of the bicentennial regulations is invalid to the extent that it would require municipalities to actually expend their own funds as a precondition to receiving reimbursement, (3) that the Department waived the applicability of Section 51.2 of the bicentennial regulations, (4) that the Board incorrectly interpreted paragraph 4(c) of the Agreement, and (5) that the failure to submit quarterly reports did not constitute a breach of contract. We note, however, that in ruling against Montgomery County below the Board did not base its decision on statutory grounds or on its interpretation of paragraph 4(c) of the

Agreement or on the fact that Montgomery County failed to submit quarterly reports. Instead, the Board concluded (1) that the Agreement specifically required Montgomery County to actually expend its own funds as a precondition to receiving reimbursement, and (2) that Montgomery County did not comply with this precondition and was accordingly not entitled to reimbursement. Since this conclusion, if supported by the evidence, was sufficient grounds for entering judgment against Montgomery County, the real issues in this appeal, in our view, are whether the Board's decision in this regard was legally proper and based on substantial evidence.[6] Accordingly, we shall briefly address ourselves to these issues.

This Court has held that "[i]n construing a contract each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *John McShain, Inc. v. General State Authority,* 9 Pa. Commonwealth Ct. 427, 431, 307 A.2d 469, 472 (1973). Furthermore, our Supreme Court has stated that

[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence.

*East Crossroads Center, Inc. v. Mellon-Stuart Company,* 416 Pa. 229, 230-231, 205 A.2d 865, 866 (1965); *accord, Security Painting Co. v. Department of Trans-*

---

[6] Our scope of review of Board decisions is limited to determining whether or not the order of the Board was supported by substantial evidence and was in accordance with the law. *J. E. Brenneman Co. v. Department of Transportation,* 56 Pa. Commonwealth Ct. 210, 424 A.2d 592 (1981).

*portation,* 24 Pa. Commonwealth Ct. 507, 357 A.2d 251 (1976).

After carefully reviewing the Agreement as a whole, we believe that the Board correctly concluded that the Agreement clearly and unambiguously requires Montgomery County to actually expend its own funds on BHAR system expenses as a precondition to receiving reimbursement from the Department. As the Department noted before the Board, Section 2 of the Agreement clearly states that Montgomery County must comply with the provisions of Addendum "A" as a precondition to receiving reimbursement from the Department, and Addendum "A" in turn explicitly requires Montgomery County to expend its own funds in order to qualify for reimbursement. No other provisions of the Agreement modify this clear expression of intent.

Furthermore, since the parties' intent is clearly expressed in the Agreement, we believe, contrary to Montgomery County's allegations, that the Board correctly disregarded any evidence of precontract discussions with Susan Gahres in arriving at its interpretation of the Agreement. *East Crossroads Center, Inc.*

Since, in our view, the Board's conclusion that Montgomery County was required to actually expend its own funds in order to qualify for reimbursement under the provisions of the Agreement was clearly supported by substantial evidence, and since it is undisputed that Montgomery County did not actually expend any of its funds or contribute any services to the BHAR system project, we conclude that the Board properly entered judgment against Montgomery County and in favor of the Department.[7]

---

[7] We note that Montgomery County also alleges in its brief that it was prejudiced by the admission into evidence of certain letters referring to alleged deficiencies in the BHAR system's operation.

Accordingly, we enter the following

ORDER

AND Now, September 23, 1981, the opinion and order of the Board of Arbitration of Claims, dated May 9, 1980, Docket No. 597, is affirmed.

---

Since there is no indication that the Board relied on these letters to deny relief to Montgomery County, the Board's error, if any, was harmless.

---

CONCURRING OPINION BY JUDGE ROGERS:

I concur in the result reached by the Court because it is clear from the record that Montgomery County has expended none of its funds on account of the BHAR system and, therefore, that no reimbursement under the Act is required.

---

DISSENTING OPINION BY JUDGE CRAIG:

The state here seeks to renege on the obligations of a governmental program, which it encouraged, by relying upon an unrealistic interpretation of a provision of doubtful legality. We should not permit the Commonwealth to display a brand of ethics which would be of marginal validity in private business.

The record establishes that the state accepted the county for this Bicentennial program with full awareness that the regional planning commission (DVRPC) was to be the county's alter ego for the purpose of operating the program and paying the out-of-pocket expenses. The state cannot rationally consider the DVRPC a nonentity for the purpose of program recognition and then regard it to be a separate entity as to the making of expense payments. No great imagination is required—and no public purse is endangered—if we regard expenses paid by DVRPC as being paid by and on behalf of the county.

The Act of July 12, 1972 (Cooperation Law), in its Section 4, 53 P.S. §484, expressly authorizes a county, by act of its governing body (as here), to "delegate or transfer any function . . . to one or more other governmental units . . . , including . . . [a] newly created governmental unit," *i.e.*, the DVRPC.

Moreover, because the appropriation law, the Act of December 16, 1975, P.L. 744 (Act 50-A), provides in Section 2 that reimbursement is to be made for expenses "incurred" by municipalities, the state's regulation and contract provision conflict with the intent of that statutory wording because the term "incur" clearly embraces the accrual of expenses, as well as actual payment. Webster's Third New International Dictionary 1146 (1966). The result should not be affected by the Catch 22 contention that the county's liability to DVRPC technically would not accrue until the state reimbursement has been made.

We should reverse the Board of Claims and prevent the state from souring the spirit of 1976.