## Jackson et al. *v.* McKeesport, Appellant.

Argued October 2, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Harry M. Jones,* for appellant.—Whether (1) amount allowed in the final estimate or certificate of the engineer for the replacement and construction of a water line to replace the original one destroyed, was within authority of the clause of arbitration, and whether (2) the municipality must plead set-off prior to trial: Lauman v. Young, 31 Pa. 306; Chandley Bros. v. Boro., 200 Pa. 230; Somerset Boro. v. Ott, 207 Pa. 539; Ruch v. York, 233 Pa. 36; Hunn v. Institution for Blind, 221 Pa. 403; McDonald v. Twp., 294 Pa. 412; Kann v. Bennett, 234 Pa. 12; Cramp & Co. v. Realty Corp., 268 Pa. 14; Zimmerman v. Marymor, 290 Pa. 299; Salt Lake City v. Smith, 104 Fed. 457; Cosgrove v. Cummings, 190 Pa. 525; Schultz v. Seibel, 209 Pa. 27; Boston Store v. Schuter, 114 S. W. 242; Ahrens v. Reading, 261 Pa. 100.

*Charles K. Robinson, William Anderson, Jr.,* and *Dickie, Robinson & McCamey,* for appellee, were not heard.

OPINION OF MR. CHIEF JUSTICE FRAZER, November 23, 1931:

In this appeal by defendants in an action of assumpsit, the facts are, briefly stated, as follows: Plaintiffs, engaged as contractors, entered into a contract with the City of McKeesport on August 23, 1926, to construct a pipe-line "across the 15th Street Bridge," for the pur-

pose of supplying water from defendant city's water system, to Liberty Borough and Port Vue Borough, adjoining municipalities. December 4, 1926, plaintiffs notified the city authorities that the pipe-line was completed and ready to be turned over to the municipality. Inspection of the work was had and, it appearing portions of grouting, painting and repairing of a slight leakage demanded attention of the contractor, the parties agreed final acceptance of the pipe-line should be deferred until the following spring. Defendant city paid plaintiffs the estimate due to the time of inspection less $350 (and the retained percentage as provided in the contract)—the $350 being estimated as the cost of final completion of the work. It was agreed by the parties that the pipe-line should be put into service immediately, which was done and on the night of January 16, 1927, owing to unusually cold weather, and through no fault of plaintiffs, the water in the line froze, causing the pipes to burst and rendering the line useless. The engineers, appointed under provisions of the contract as supervisors and arbiters, instructed the contractor to repair and replace the line; plaintiffs protested, contending they were not required to do so under the contract; the city solicitor and other municipal officers joined the engineers in demanding that plaintiffs repair the broken line. Plaintiffs made the necessary replacements under protest reserving the right to demand compensation for such work. Later the contract was completed, and, on August 9, 1927, after inspection, the supervising engineers certified to the city the final estimate on the work, including the item representing the cost of repairing the broken water line in January, on a time and material basis, plus 15 per cent. Payment of this latter item, amounting with interest to $3,036.75, is resisted by defendant. The court directed a verdict in favor of plaintiffs for $2,-294.50, representing the disputed items and interest, less $742.25, which amount defendant alleged it paid·

the engineers as additional compensation growing out of inspection on the replacements. Later, on motion for judgment n. o. v. filed by plaintiffs, judgment for the whole sum of $3,036.75 was entered in their favor.

The city contends the freezing and breaking of the line occurred following substantial completion of the contract, that the repairing and replacements were not within the contemplation of the contract and accordingly not within the jurisdiction of the engineers for inclusion in their estimate. On this question it will be seen from the terms of the contract, that the engineers were vested with unusually extensive powers of supervision and settlement of all disputed matters. The contract provided the work must be performed "complete in every detail, under supervision and to the entire satisfaction of the engineers, Hudson & Myron." It further provided that "If any doubt exists as to the character of any portion of the completed work, it must, at the request of the engineers, be removed. If found to be imperfect, as determined by the engineers, it must be made good, otherwise the cost of such extra work shall be paid by the city plus fifteen (15%) per cent profit"; also that "It is the intention of the contract that the plans and specifications shall set forth the work which shall be done by the contractor. If anything additional, however, shall be required, and if, in the opinion of the engineers, the items are not entirely covered by the specifications and plans, then the contractor shall supply such additional items upon an order from the engineers, at the cost of the same plus fifteen (15%) per cent profit"; and finally "The engineers shall have the final decision on all matters of dispute involving the character and amount of work, and the compensation to be made therefor, or any question arising under the contract."

We have frequently held that contracts for construction, naming arbiters to whom disputes shall be referred, are valid, and such provision is of binding effect on the

parties: Bizet v. Smith, 272 Pa. 31; McCloskey v. Marks, 263 Pa. 441. The award of the engineers here in question is not attempted to be impeached for fraud, collusion or caprice. In view of the broad powers conferred upon the engineers, and the fact that the city placed its own interpretation on the contract and compelled the contractors to install the replacement under the theory that it was part of the original contract, we concur in the conclusion reached by the court below that the city cannot now be heard to object to the engineers' final estimate settling the dispute concerning payment of the cost of replacements by including an item necessarily connected therewith. Defendant's contemporary construction of the contract may not now be abandoned to plaintiffs' prejudice: see McKeever v. Westmoreland Coal Co., 219 Pa. 234, 236. The powers given to the arbitrators vested decision of what was incidental work in them and they have decided; Hudson testified the replacement was incidental work and his testimony was not challenged. Inasmuch as the work under the contract had not been finally accepted at the time the replacement was ordered, we cannot say the arbitrators exceeded their jurisdiction in including the item for the repairs in dispute in their final estimate. The arbitrators did no more than they were expressly authorized to do in passing upon a question or dispute respecting a matter pertaining tó the contract: Clark & Sons Co. v. Pittsburgh, 217 Pa. 46, 53.

As to the set-off of $742.25, contended for by the municipality, the court properly disallowed it. The Act of May 8, 1913, P. L. 172, section 1, providing that municipal corporations shall not be required to file affidavits of defense in actions of assumpsit, does not, from the intrinsic nature of set-off and counterclaim, excuse such municipal corporations from pleading set-off when they wish to make it part of their case against a plaintiff suing in assumpsit. The set-off not having been pleaded, the court in banc acted correctly in sus-

taining plaintiffs' motion and entering judgment for the entire amount of plaintiffs' claim to the exclusion of the city's alleged set-off.

The judment is affirmed.