Massiah *v.* Hood et al., Appellants.

Argued October 11, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Abraham Wernick,* of *Evans & Wernick,* with him *Nathaniel Shapiro,* for appellants.

*Samuel I. Sacks,* of *Sacks & Piwosky,* for appellee.

OPINION BY STADTFELD, J., December 14, 1939:

The defendants, appellants, were the general contractors, for the erection of a high school building in Collingdale, Pennsylvania. The plaintiff, appellee, was the sub-contractor to construct the cement and concrete work. He brought this action to recover a balance due on his contract and also for certain items he denominated "extras".

The contract was embraced in an oral estimate submitted by appellee to appellants and a letter from the latter to the former, dated February 5, 1936, as follows: "We hereby accept your estimate to furnish all the labor and materials necessary to do all the cement and concrete work, build all forms, furnish and erect all reinforcing material and mesh, according to the plans and specifications as prepared by Heacock and Hokanson, architects, Philadelphia, Pennsylvania, on the above-named job for the sum of $6100."

The balcony in the high school involved in this case consisted of twelve successively ascending platforms. The framework of the balcony was of steel with a cement floor or treads. Paragraph 20 of the specifications provided for the construction of these cement treads in the following language: "The cement treads shall be 2½ inches thick carried on ribbed wire lath 4.2 pounds per square yard or Keystone beam steel floor, U. K. 18/18 or similar approved material for carrying the cement fill and live load of 100 pounds per square foot."

Paragraph 10 of the statement of claim averred as follows: "The stair work and the balcony steps on the said building was changed so that it became necessary to place form work on the under side of the above, which form work was not contemplated by the original plans and specifications. This work defendants orally authorized the plaintiff to do and the cost of this work is outlined below: (Detailed list of items, amounting to

$780.07 follows)." This item is the principal matter in dispute in this appeal.

In paragraph 15 of the statement of claim, appellee averred that the appellants agreed to pay the prices for the extra work.

The appellants in the affidavit of defense denied that the form work was not contemplated by the original plans and specifications and further denied that they ever agreed to pay therefor. Appellants also claimed an amount due them from the appellee representing the correction of certain defective work and also several items for materials purchased by the appellee for which the appellee, in writing, directed the appellants to pay.

The reply denied generally the averments of the counter-claim.

The jury returned a verdict for $1049.08, which included the item for the form work contained in paragraph 10 of the statement of claim.

The appellants filed a motion to reduce the verdict and a rule for new trial, both of which motions were discharged and judgment was entered on the verdict as rendered by the jury. This appeal followed.

The only questions raised on this appeal relate to the recovery allowed for the extra work embraced in paragraph 10 of the statement of claim, and the action of the court in withdrawing from the jury several items for materials purchased by appellee and not paid for, and for which appellants claim to have been legally bound; and the refusal to permit appellants to amend paragraph 10 of the affidavit of defense.

As to the item of $780.07, the issue narrowed itself down to whether certain ribbed-wire lath or patented steel floor was reinforcement to be included by the plaintiff or was steel work to be furnished by another subcontractor.

From the testimony presented at the trial, the following facts appeared, as set forth in the opinion of the court below from which we quote: "Both the ribbed

wire lath and Keystone beam steel floor referred to above are used as support for the cement treads. The plans produced at the trial of this case indicated that a steel flooring was to be used for carrying the cement fill. A controversy arose during the progress of the work between the plaintiff and the defendants as to who was to supply this steel flooring. The defendants contended that plaintiff was to supply it, and the plaintiff, on the other hand, contended that it was not a part of his contract, but was part of the steel construction which was to be supplied by the miscellaneous steel sub-contractor or the defendants. The defendants thereupon insisted that the plaintiff proceed with the cement work on the balcony and construct wooden forms in which to pour the cement for the balcony treads. The plaintiff agreed to do so provided he was paid for these forms which he considered as additional work made necessary by the defendants' failure to supply the steel plates. The plaintiff sought to recover in this action, the sum of $780.07 as being the reasonable cost of the materials and labor involved in the construction of these wooden forms.

"The plans produced at the trial did not indicate which particular sub-contractor was to furnish the steel flooring for the balcony. They showed not only this steel flooring but other steel construction for the balcony which the defendants admitted it was not the obligation of the plaintiff to supply. The specifications under the heading 'Cement and Concrete Work' did not refer to this flooring at all. Reference to this steel floor was contained in the specifications under the item 'Miscellaneous steel and light iron work', which specifications described the manner in which the whole balcony was to be constructed. The plans and specifications therefore could not be said to clearly indicate that it was the plaintiff's duty to supply the steel floor for the balcony steps. The defendants apparently realizing this difficulty sought to prove that this steel floor was a form

or re-enforcing material or mesh, presumably because the contract provided that the plaintiff was to 'build all forms, furnish and erect all re-enforcing material and mesh'. There was, however, testimony on behalf of the plaintiff that this steel floor was neither a form, re-enforcing material or mesh."

Quoting further from said opinion: "The defendants, however, contend that they advised the plaintiff at the time he constructed these wooden forms that they would not pay him therefor, and that, the plaintiff having constructed them nevertheless, he cannot charge the defendants with the cost thereof. We cannot agree with this contention. The letters offered in evidence between the plaintiff and defendants relating to this controversy clearly indicate that the defendants refused to pay the plaintiff for these additional forms because they insisted that he was bound to supply the steel flooring, and that these wooden forms were supplied by him in substitution therefor. We cannot assume that they would have taken the highly improper and questionable position of refusing to pay for these forms if they were convinced that they were made necessary by their own failure to supply the steel flooring. These wooden forms having been constructed with the defendants' consent, and they having been made necessary by the defendants' own failure to supply the steel flooring, we do not think they ought to be now heard to say that they are nevertheless not liable for the cost of these forms because they advised the plaintiff at the time he constructed the forms that they would not entertain any claim therefor."

From the reference to the relative divergent interpretations of the plans and specifications by the respective parties, it is manifest that the specifications were ambiguous, and required submission to a jury to decide which interpretation is proper.

Had appellee, because of interpretation of the plans and specifications by defendants that the wooden forms

in controversy were embraced in the contract, refused to proceed with the work, he would have laid himself open to an action of damages for breach of contract if appellants' interpretations were sustained.

The appellants cannot avoid liability for the payment of this extra work where they compelled appellee to perform the same under the theory that it was part of the original contract: *Jackson et al. v. McKeesport, Appellant,* 305 Pa. 198, 157 A. 472; approved in *Mannella v. Pittsburgh, Appellant,* 334 Pa. 396, 402, 6 A. 2d. 70.

Where there is uncertainty as to what specifications are covered by a written contract, it may be explained by parol evidence and then becomes a question for the jury: *Kendig v. Roberts,* 187 Pa. 339, 40 A. 1022.

Appellant further contends that appellee having declared on an express contract cannot recover on an implied assumpsit. We have held in *Hinsdale v. Call,* 78 Pa. Superior Ct. 121, 123, in the opinion by Judge HENDERSON: "Nor do we regard the objection as well taken. The statement contains a recital of the facts out of which the action arises, and our attention has not been called to any provision of the Practice Act of 1915, nor of any preceding statute which forbids a claim on an implied assumpsit. It is requisite under the statute that the statement give the defendant clear and definite information of the nature of the plaintiff's demand, and there is authority in *Winters v. Mowrer,* 1 Pa. Superior Ct. 47, in support of the statement of claim." See also, *Pierson v. London,* 102 Pa. Superior Ct. 176, 179, 156 A. 719.

Appellants assign as error the rejection of set-off claims against appellee for which appellants were obligated to pay and which appellee in writing directed appellants to pay. The defendants, under the contract with the School District of the Borough of Collingdale, were compelled to furnish a labor and materialman's bond which is set forth in the record. The condition

of this bond was that if payment was made for all labor and materials, then it would be void, otherwise anyone furnishing labor or materials could recover against the defendants or their surety, providing suit was started not later than six months after the complete performance of the said contract and final settlement thereof.

The question concerns itself with two items: One with regard to the Union Paving Company, and the other with regard to the Clifton Bldrs. Supply Company. In both of these cases, the plaintiff wrote letters to the defendants. The letter, with regard to the Clifton Bldrs. Supply Co. involves the sum of $44.74; while the letter with regard to the Union Paving Co., involves the sum of $341.97. In both of these letters, the plaintiff directed the defendants to pay his creditors these sums, and then the defendants could deduct these sums from the balance due the plaintiff. To date of trial, the defendants had not paid these sums or either of them.

Having failed to pay according to the tenor of the letters, they certainly cannot be heard to make claim for these amounts because they might never pay them and then the plaintiff would be compelled to pay twice for these items. It also appears that the Union Paving Company has started suit against the plaintiff. Further, with regard to the Union Paving Company's claim in which suit had been started on the bond against the defendants and their surety, the defendants filed an affidavit of defense in which they denied liability on the claim on the grounds that they had no knowledge of the claim; that the price was excessive; and that the Union Paving Company had failed to bring suit within the period fixed by the penal bond on which their rights were predicated.

As stated in the opinion of the court below: "The existence of these claims against the plaintiff *unpaid* do not amount in law to a satisfaction of plaintiff's claim against defendants and cannot, therefore, prevent the entry of the present judgment which is an adjudica-

tion that defendants are indebted to the plaintiff in the amount thereof: ......". (Italics supplied). Defendants can be protected by a stay of execution to the extent of any liability which may be established against defendants on the claims, or either of them. We see no error in the action of the court under the circumstances, in rejecting the set-offs claimed.

Appellants assign as error the refusal to permit them to amend Paragraph 10 of the affidavit of defense relating to the claim of $780.07 involved in this suit, as also the refusal to strike out the evidence, ex parte appellee, relating to this item.

During the trial of the case, appellee offered in evidence, paragraph 10 of the statement of claim, which was objected to by the appellants' counsel. Appellants argued that since the entire claim is denied, it was not necessary to further deny that the various charges for the specific items making up this claim of $780.07 were just and reasonable. The record, however, shows that the court permitted appellants to offer countervailing evidence showing that the charges were not reasonable. Under these circumstances, we do not see that appellants were in any way prejudiced. There was no error in admission of the averments of paragraph 10 of plaintiff's statement as they were not sufficiently denied. As was said by Mr. Justice BARNES, in *Bowman v. Gum*, 327 Pa. 403, 409, 193 A. 271: "The right to amend is a broad one. As the present Chief Justice (KEPHART) said in *Trabue v. Walsh*, 318 Pa. 391, 393; 'Pleadings may be amended at any stage of the case. The matter is entirely within the discretion of the trial judge, but will generally be permitted when it does not violate any law or prejudice the rights of the opposing party. The allowance of an amendment rests in the reasonable discretion of the court and in the absence of plain error, its action will not be reversed: *Hileman v. Hileman*, 172 Pa. 323; *Lehigh & Wilkes-Barre Coal Co. v. Pitts-*

*ton C. M. Co.* 289 Pa. 492; *Berlin S. C. & C. Co. v. Rohm,* 272 Pa. 24; 49 Corpus Juris, 474, see note.' "

The case was ably tried and fairly submitted in a comprehensive charge to which no exceptions were taken, and concerning which no complaint is made.

The assignments of error are overruled and judgment affirmed.