# National Products Company, Inc. *v.* Atlas Financial Corporation, Appellant.

Argued September 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*A. Richard Gerber*, with him *Gerber, Davenport & Wilenzik,* for appellant.

*Oscar S. Schermer,* with him *Schermer and Schermer,* for appellee.

OPINION BY SPAETH, J., December 22, 1975:

This is an appeal from the denial of a motion for a new trial in an assumpsit action.

By written agreement of August 25, 1966, appellant, Atlas Financial Corporation, agreed to lend $260,000 to the 215 Broad Corporation, part of this amount to be applied to the repayment of an earlier loan by Atlas to 215 Broad, and the balance, some $229,000, to be used in the renovation of a restaurant located at 213-15-17 South Broad Street in Philadelphia. 215 Broad's interest in the restaurant may be explained as follows.

As recited in the agreement, 215 Broad had contracted to lend money to Stanley Green's Broad Street Corporation to enable Stanley Green's to renovate the restaurant. Stanley Green's was a tenant in the 215 Broad Street building, which constituted the sole asset of 215 Broad. The president and sole shareholder of 215 Broad was Irving Feldman, and Feldman and his brother-in-law, Stanley Green, each owned one-half of the stock in Stanley Green's.

Under the agreement, Atlas would distribute the $229,000 to 215 Broad only upon compliance by 215 Broad with certain conditions. Thus, 215 Broad agreed, *inter alia,* to provide Atlas with verified copies of the bills covering the restaurant alterations, improvements, equipment and fixtures, and also with an architect's certification that the work had been done, and to permit Atlas to inspect the premises.

In September, 1966, Feldman and the manager of the restaurant met with Jules Caplan, vice-president of appellee, National Products Company, a wholesale distributor of food service equipment. Over a two to three-day

period, the restaurant manager selected approximately $16,000 of merchandise. National, however, refused to deliver the merchandise since it was given no assurance that it would be paid. Feldman told National that Joseph Rappaport, Esquire, attorney for both 215 Broad and Stanley Green's, would arrange for National to be paid.

National provided Rappaport (at his request) with a list of the merchandise the restaurant manager had selected. On September 30, 1966, Rappaport transmitted this list to Atlas, and wrote a covering letter to Myron W. Harris, Esquire, Atlas's vice-president and house counsel, who had drafted the August 25 loan agreement. Rappaport's letter indicated that for various business reasons it was essential that the equipment be delivered by National as soon as possible. The letter concluded as follows:

"Pursuant to our discussion in this matter, we request that you forward letter to National Products Company as soon as possible, stating that upon certification of delivery of the merchandise in this order on restaurant premises, you will issue a check to their order and charge same to on account of proceeds of loan made to 215 Broad Street Corporation in a sum equivalent to 80% of the amount due. Please send copy of letter to us." (Plaintiff's exhibit P-3).

On October 7, 1966, Harris wrote National. Since the wording of this letter is crucial to Atlas's contention on this appeal, it is necessary to reproduce its full text:

"This is to confirm that 215 Broad Corporation has consummated a loan agreement with Atlas Financial Corporation with respect to 213-215-217 South Broad Street and subject to the fulfillment by 215 Broad Corporation of the terms, provisions and conditions of said loan agreement we are presently holding approximately $118,000 for distribution to them.

"Upon fulfillment by 215 Broad Corporation of the terms, provisions and conditions of our loan agree-

ment and authorization by them we shall be happy to make distribution to National Products Company in connection with any amounts legally due your company." (Plaintiff's exhibit P-1).

Approximately two days after National received this letter, Feldman and the restaurant manager informed National that Stanley Green's would need some $10,000 of merchandise for the restaurant, in addition to the $16,000 of merchandise already ordered. (Thus, Stanley Green's total order to National was for $26,000.) Again, however, National refused delivery without assurance of payment.

In mid-November, 1966, National received payment for $10,000 of Stanley Green's $26,000 order. This payment, however, was not pursuant to the letter of October 7 that Harris, on behalf of Atlas, had written National. Rather, Feldman testified, it represented the proceeds of a loan from the Provident Bank to 215 Broad, which in turn had made a loan to Stanley Green's. Nevertheless, shortly after receiving the $10,000 payment, National shipped to Stanley Green's the entire $26,000 order, apparently believing, on the strength of Harris's letter, that the $16,000 balance would be paid by Atlas. National did this without inquiring whether there had been "fulfillment by 215 Broad Corporation of the terms, provisions and conditions of our [Atlas's] loan agreement and authorization by them [215 Broad] . . .," as specified in the letter.

Until April, 1967, National received additional payments on Stanley Green's $26,000 order, which reduced the balance due to $11,250.02. In an attempt to collect this amount, Caplan, National's vice-president, repeatedly called Harris, who indicated that he would get in touch with Feldman and Green. When payment was not forthcoming, National, on October 20, 1967, brought this action in assumpsit against Atlas.

The case came to trial in November, 1971. At the conclusion of the evidence, Atlas's counsel asked the trial

judge to charge the jury that it could not reach a verdict in favor of National unless it found that 215 Broad had fulfilled the terms, conditions and provisions of the August 25, 1966, loan agreement between Atlas and 215 Broad, and had authorized Atlas to pay National. This point for charge, it will be observed, echoed the language of the October 7, 1966, letter from Harris to National. The judge, however, denied the point, and in his charge repeatedly and firmly directed the jurors to eschew consideration of any conditions:

> "I gloss over those names [Stanley Green's Broad Street Corporation and 215 Broad Street Corporation] quickly because *so far as I can see, ladies and gentlemen, they do not enter into it.* The main question here is: was there a contract between the Atlas Financial Corporation and National Products Company ..." (NT 214)

> ....

> "The first part of the [October 7, 1966] letter [from Harris to National], much has been made about it by counsel and by the defendant, that there were conditions that were required to be performed between the corporations and the Atlas Financial Corporation ... *I say to you as a matter of law that that has nothing to do with your consideration. You have nothing whatsoever to do with the conditions* that existed between Atlas Financial Corporation and the 215 Broad Street Corporation ..." (NT 218)

> ....

> "But the conditions which counsel has referred to repeatedly as being *conditions precedent have nothing whatsoever to do with the matter.*" (NT 219)

> (Emphasis supplied throughout).

The jury returned a verdict in favor of National for the full amount due, without interest. On February 1, 1974, a court *en banc* denied Atlas's motion for a new trial, and this appeal ensued.

We have concluded that the trial judge erred in his construction of Harris's letter of October 7, 1966, to National, and that he should have instructed the jury on the law of contractual conditions.[1] A new trial must therefore be awarded. *Stroh v. Hess*, 1 W. & S. 147, 154 (Pa. 1841).[2]

Analysis of the relationship between Atlas and National must necessarily begin with the preliminary and fundamental determination of whether the exchange of correspondence between National and Atlas resulted in the formation of a contract.

Generally, whether the parties made an agreement is a question of fact to be determined by the jury. *Folsom v. Cook & Co.*, 115 Pa. 539, 548, 9 A. 93, 96 (1887) ; *Kirk v. Brentwood Manor Homes, Inc.*, 191 Pa. Superior Ct. 488, 492, 159 A.2d 48, 51 (1960) ; 8 P.L.E. *Contracts* §395, at 478 (1971). Assuming *arguendo* that Atlas was under a contractual duty to pay National, it was the trial judge's responsibility to construe Harris's letter of October 7, 1966, written on behalf of Atlas, to determine whether that duty was hedged in or qualified by conditions. The function of contract interpretation and construction is a question of law peculiarly within the province of the court. *Filler Products, Inc. v. Corriere*, 381 Pa. 394, 395, 113 A.2d 219, 221 (1955) ; *Erie Forge Co. v. Pennsylvania Iron Works Co.*, 22 Pa. Superior Ct. 550,

---

1. Although the grant or refusal of a new trial is a matter within the sound discretion of the trial court, reversal is required where the jury has been improperly instructed. *Tomasek v. Monongahela Ry. Co.*, 427 Pa. 371, 378, 235 A.2d 359, 364 (1967) ; *Eldridge v. Melcher*, 226 Pa. Superior Ct. 381, 387-88, 313 A.2d 750, 754 (1973) ; *Williams v. Woodard*, 171 Pa. Superior Ct. 479, 481, 90 A.2d 329, 331 (1952).

2. Appellant also contends that the verdict was against the law and contrary to the weight of the evidence, that the trial judge erred in making certain evidentiary rulings, and that the judge lacked impartiality. It is unnecessary to address these contentions. *See also* n. 3, *infra.*

556 (1903); *Seaboldt v. Pennsylvania R.R.*, 290 F.2d 296, 298 (3d Cir. 1961) (GOODRICH, J.); J. Calamari & J. Perillo, *Contracts* §22, at 29 (1970); 4 S. Williston, *Contracts* §601, at 303 (W. Jaeger ed. 1961).

The trial judge's refusal to instruct the jury to consider conditions precedent was evidently predicated upon his construction of Harris's letter as not sufficiently explicit to impose a condition. *See* Supplemental Record—Opinion, at 8b. We disagree. Even construing the language of the letter most strongly against Atlas, as we must, *see* 4 S. Williston, *Contracts* §621, at 760 (W. Jaeger ed. 1961), we must hold that Atlas's promise, if one existed, was conditional in nature.

The Restatement of Contracts defines a conditional promise as

> "a promise so qualified that a duty of immediate performance will not arise until some condition exists or will cease after some condition exists."

Restatement, *Contracts* §254, at 365 (1932). *See also, Id.* §250, at 359; *Feinberg v. Automobile Banking Corporation*, 353 F. Supp. 508, 512 (E.D. Pa. 1973). Professor Williston's observations are particularly pertinent in the circumstances presented in this case:

> "A condition in a promise *limits the undertaking of the promisor to perform*, either by *confining the undertaking* to the case where the condition happens, or to the case where it does not happen. [§663, at 125]
>
> . . . .
>
> "The conditions are inserted *for the promisor's protection*. [§664, at 130]" 5 S. Williston, *Contracts* (W. Jaeger ed. 1961) (emphasis supplied.)

In making a promise expressly conditional, contracting parties need not use any particular words. On the contrary,

> ". . . an intention to make a promise conditional may be manifested by the general nature of a promise

or agreement, as well as in more formal ways, and if so manifested the condition is express." Restatement, *Contracts* §258 and comment a (1932).

The application of these principles requires the conclusion that any duty that Atlas may have had to National did not become absolute until 215 Broad had fulfilled the terms of its August 25, 1966, loan agreement with Atlas, that is, until 215 Broad had provided Atlas with verified copies of the bills covering the improvement of the restaurant, and also with an architect's certification that the work had been done, and until it had permitted Atlas to inspect the premises. Harris's letter of October 7, 1966, to National could not have stated more plainly that only upon fulfillment of the conditions of the loan agreement, and only upon authorization by 215 Broad, would Atlas "be happy to make distribution to National Products Company in connection with any amounts legally due your company." Although the letter did not quote *in haec verba* the conditions of the loan agreement, it told National that there were such conditions. If National expected to look to Atlas for payment, it was up to National to find out what the conditions were, and whether they had been met.

At retrial, it will be necessary for the court to instruct the jury on the law of conditional promises. If the jury decides that in fact there was an agreement between National and Atlas, then it will have to decide whether the evidence shows performance of the conditions precedent. 8 P.L.E. *Contracts* §395, at 480 (1971).[3]

The order refusing a new trial is reversed with a *venire facias de novo*.

3. Appellant contends that the trial judge's charge on the essential elements of a contract was incomplete. In light of our disposition of the case, we need not discuss these contentions.