Hempt Brothers, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation, Respondent.

Argued June 9, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*David B. Disney,* with him *McNees, Wallace & Nurick,* for petitioner.

*Richard S. Herskovitz,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., July 12, 1978:

Petitioner seeks review of an adverse determination by the Board of Arbitration of Claims (Board) denying petitioner additional compensation in the amount of $72,722.82 under a highway construction contract with the Commonwealth of Pennsylvania, Department of Transportation (respondent). We affirm the determination of the Board.

On November 2, 1972 petitioner executed a contract to perform all work in improving a section of Interstate 81 in East Pennsboro and Hampden Townships,

Cumberland County. The initial phase of this construction involved clearing and grubbing the project area and disposing of burnable spoils for which petitioner bid $133,500.00 on a lump sum basis pursuant to the invitation to bid. Petitioner subcontracted the clearing and grubbing work in East Pennsboro Township (where 80% of the project area was located) to Kerndale Constructing Company (Kerndale). After Kerndale began work in December 1972, respondent's project engineer informed Merritt Rimshaw, a Kerndale official, that open air burning was prohibited in East Pennsboro Township by Department of Environmental Resources (DER) regulations as a part of the Harrisburg Air Basin established pursuant to Section 5 of the Air Pollution Control Act.[1] The engineer and Rimshaw agreed to continue burning spoils by constructing an open pit incinerator which is permitted in an air basin. Subsequently, in a letter to respondent dated February 12, 1973, petitioner stated that while it was aware that 80% of the project area was located in an air basin at the time of its bid, it was relying on Item 213-0001 of the contract, titled Temporary Project Air Pollution Control, in seeking additional compensation for construction of the open pit incinerator. By letter dated February 15, 1973, respondent's district engineer denied payment on the ground that Item 213-0001 does not apply when clearing and grubbing is done in an air basin.

Petitioner appealed this determination to the Board. At a hearing held on July 27, 1976, Rimshaw

---

[1] Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §4005 (Act). Pursuant to this section, DER established the Harrisburg Air Basin in which East Pennsboro Township is included. *See* 25 Pa. Code §121.1. DER regulations further provide that open burning is prohibited absolutely in air basins, but permitted conditionally outside air basins unless the emissions interfere with or cause damage to health or property. *See* 25 Pa. Code §129.14.

testified that Kerndale[2] was unaware that 80% of the project area was located in the air basin at the time of its bid. He stated that he relied on the inclusion of Item 213-0001 as allowing for additional costs to meet air pollution standards regardless of whether or not the project was located in an air basin. Rimshaw further testified regarding previous contracts with respondent that when he knew the work was to be done in an air basin he would bid on the basis of using the open pit incinerator. The Board found petitioner could not rely on Item 213-0001 since the provision, without any ambiguity, applies only when an actual violation of the Air Pollution Control Act has occurred.

Petitioner contends the Board erred as a matter of law in finding that Item 213-0001 contained no ambiguity. It bases its allegation of ambiguity on two theories: (1) that Item 213-0001 does not specifically state that it does not apply to project areas inside a DER-established air basin; and (2) that the language of Item 213-0001 is unclear as to whether there must be an actual violation of the Air Pollution Control Act before alternative methods of burning may be employed and compensated for under the contract.

Although petitioner focuses on Item 213-0001 as the center of the controversy, it is axiomatic that where the court is called upon to determine the meaning of words in a written contract, its function is to give effect to the intention of the parties as ascertained from an examination of the entire instrument. *Department of Transportation v. Acchioni and Canuso, Inc.*, 14 Pa. Commonwealth Ct. 596, 324 A.2d 828 (1974). When viewing the entire contract here in

[2] It might be considered significant that petitioner's only witness, Rimshaw, testified as to Kerndale's interpretation of the contract, not petitioner's.

question it is apparent that Item 213-0001 is a special provision which augments general provisions contained in Respondent's Form 408(1970) relating to clearing and grubbing operations. Section 201.3 of Form 408 specifically provides, "[t]he contractor's attention is directed to the provisions of Section 107.01, and especially the Air Pollution Control Act, approved January 8, 1960, or as amended." Section 201.5(b) of the general provisions provides that bidding for clearing and grubbing shall be on a "lump sum price . . . which price shall include all materials, equipment, tools, labor, and work incident thereto." Thus, it is clear that Form 408 put the contractor on notice to be aware of DER regulations regarding burning of spoils during clearing and grubbing operations.

To these general provisions, Item 213-0001 provided as follows:

DESCRIPTION—This work shall consist of disposing of burnable spoils by the use of an open pit incinerator, by removal, or other disposal methods approved by the engineer. This work shall not be performed unless prior approval is received from the Chief Highway Engineer and the Federal Highway Administration, if applicable.

CONSTRUCTION REQUIREMENTS

(a) General. Temporary air pollution control measures will be used whenever burning is prohibited as a result of a violation of the Air Pollution Control Act, approved January 8, 1960 or as amended.

. . . .

BASIS OF PAYMENT—Temporary Project Air Pollution Control will be paid for as follows:

. . . .

1.(b)   In accordance with the procedure set forth in Section 109.04(d) for force-account work.

Viewing the contract as a whole and in conjunction with DER regulations, it is apparent Section 201.3 of Form 408 was intended to give the bidder notice that his bid should conform with the type of burning and disposal permitted under the regulations. This interpretation was confirmed by testimony of petitioner's witness that in prior contracts his bid was based on whether or not the project was located in an air basin because of the additional cost of · constructing an open pit incinerator. The DER regulations established pursuant to the Act clearly state that a contractor engaged in open air burning outside an air basin might violate the Act under certain conditions even using prior approved methods, but that he would always be in violation of the Act if he conducted open air burning inside an air basin. *Compare* 25 Pa. Code §129.14(b) *with* 25 Pa. Code §129.14(a). Thus, if Section 213-0001 were to apply to areas both in and out of air basins a contractor would always be entitled to additional compensation for work done inside an air basin. To reach such a conclusion would render the notice provision of Section 201.3 mere surplusage and the lump sum bidding procedure under Section 201.5 a vain act. Therefore, we find there is no inherent ambiguity in Item 213-0001 by reason of the failure of that provision to specify that it was not to apply to areas inside an air basin.

This construction of Item 213-0001 must also negate by implication petitioner's second contention that subparagraph (a) of Item 213-0001 does not require that a contractor must actually be cited for a violation of the Act before alternative methods of burning will be authorized and compensated for.

Where the words of a contract are clear it is not the function of this Court to give to those words a construction in conflict with the plain meaning of the language used. *See Acchioni, supra.* Moreover, this construction of subparagraph (a) would also render it unnecessary for a contractor ever to base his bid on requirements of the Act, specifically negating the need for notice of the Act's standards in Section 201.3. As Judge MENCER, speaking for the Court in *Security Painting Co. v. Department of Transportation,* 24 Pa. Commonwealth Ct. 507, 513, 357 A.2d 251, 254-55 (1976) stated:

> One contracting with the Commonwealth often does so at great risk. Before submitting his bid a contractor should become aware of all contractual provisions and their ramifications. A failure to do so is often a prelude to disappointment or financial loss.

Accordingly, we will enter the following

### ORDER

AND Now, July 12, 1978, the order of the Board of Arbitration of Claims at Docket No. 396, dated April 13, 1977, is hereby affirmed.