460 A.2d 800

THOMAS M. DURKIN & SONS, INC., a
Pennsylvania Corporation

v.

NETHER PROVIDENCE TOWNSHIP SCHOOL AUTHORITY
and H. Gilroy Damon and H. Gilroy Damon Associates,
Inc. and Haag and D'Entremont.

Appeal of NETHER PROVIDENCE TOWNSHIP
SCHOOL AUTHORITY.

Superior Court of Pennsylvania.

Argued Dec. 14, 1982.

Filed April 29, 1983.

Petition for Allowance of Appeal Granted Sept. 2, 1983.

132

George W. Thompson, Upper Darby, for appellant.

Dale A. Betty, Media, for Durkin, appellee.

Peter A. Dunn, Media, for Gilroy, appellee.

Bruce D. Lombardo, Philadelphia, for Haag and D'Entremont, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

Thomas M. Durkin & Sons, Inc., appellee, brought an action in assumpsit against the Nether Providence Township School Authority, appellant, seeking compensation for extra work required for site development in the construction of a high school. Appellant joined as additional defendants H. Gilroy Damon and H. Gilroy Damon Associates, Inc., (Damon), the engineering firm which had surveyed the site. Damon, in turn, joined Haag and D'Entremont, (Haag), the architectural firm that originally prepared the job site plans, as an additional defendant. A jury trial was held in May, 1979, and appellant moved for a compulsory non-suit at the end of appellee's case. The motion was

refused and appellant rested without presenting any testimony to rebut appellee's claim. At this time, Damon withdrew its claim against Haag, and Damon and Haag moved for compulsory non-suits which were granted. The jury awarded appellee $32,856.10. Appellant subsequently filed post-trial motions seeking a new trial, judgment n.o.v., or the removal of the non-suits granted the additional defendants. On October 1, 1979, the trial court denied all three post-trial motions, and appellant took an appeal to this court. On October 16, 1981, the appeal was quashed because the order denying appellant's post-trial motions had not been reduced to judgment and docketed. *See Thomas M. Durkin, etc. v. Nether Providence, etc.,* 291 Pa.Super. 402, 435 A.2d 1288 (1981). The procedural defect having been promptly cured,[1] we now reach the merits of this appeal.

Appellant contends that, by the terms of the contract, orders for additional work cannot be made without *written approval by the board.* Appellant maintains further that this requirement was not met and could not be waived. Moreover, appellant asserts that the contract required appellee to inspect the site prior to bidding and that appellee's failure to do so forecloses any chance of recovery. Alternatively, appellant argues that where appellee has proved that extra work was necessary, the trial court should not have entered non-suits in favor of the additional defendants.

We find that appellant's arguments lack merit and, accordingly, affirm the judgment entered.

In considering a request for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, must be considered in the light most favorable to the verdict winner. *Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973). The court must find and consider only that evidence which supports the verdict, and all conflicts must be resolved in favor of the prevailing party. *Moyer v. Ford Motor Co.,* 205 Pa.Super. 384, 209 A.2d 43 (1965). *See*

1. The verdict was reduced to judgment on October 21, 1981, and notice of appeal to this court was filed on the same date.

*Winkler v. Seven Springs Farm, Inc.,* 240 Pa.Super. 641, 643–4, 359 A.2d 440, 441 (1976).

Viewed in this manner, the evidence showed that in June, 1968, shortly after appellee was awarded a contract by appellant, appellee discovered certain discrepancies between topographical contour lines depicted on the site plans and the actual topographical conditions existing at the job site. Appellee also discovered that the job site plans did not accurately reflect the need to clear an additional ¾ of an acre of ground located on the job site. A dispute developed as to whether appellee would be required under the contract to provide the extra work necessary to clear the above referenced ¾ of an acre and also to raise or lower the ground level in order to complete the job in conformity with ground contours shown on the job site plans.

Appellant, under separate contract, retained the services of a consulting firm known as Wigton-Abbot to manage the performance of the contract by various sub-contractors including appellee. Appellee's claim for additional compensation was submitted to Wigton-Abbot in late June of 1968 for resolution. The record revealed that Wigton-Abbot investigated appellee's claim by directing the survey engineering firm, Damon, to reexamine the topographical surveys which it had prepared under separate contract with appellant during the initial preparation of job site plans. The job site plans were originally prepared by the architectural firm, Haag, which had utilized topographical surveys performed by Damon in the design of the job site plans.

After Damon completed a reevaluation of its topographical surveys, adjustments were made in the contour lines shown on the job site plans in order to provide additional soil so that appellee could raise the contour of the ground to satisfactory levels while utilizing materials available on the job site.

The contract provided that the contractor should make an examination of the work site and that the contractor would be responsible for determining the true amount of cut and fill and for supplying all the earth fill that may be required.

Therefore, even though the contract incorrectly estimated that the cut and fill on the combined east and west tracts were approximately equal, appellant consistently maintained that the discrepancies in the plans did not give rise to extra work outside the contract.

Appellee sent a letter notifying appellant that it refused to proceed until the dispute over the contested items was resolved. This prompted a letter from the school board dated April 29, 1969, which instructed appellee to proceed with the site work and that the disagreement with respect to certain facts could only be resolved later. Appellee then completed the work in a good and workmanlike manner but did so under threat of default. After the work was completed, a job meeting was held to resolve claims for extra work submitted by appellee. The meeting was conducted by Vernon Pharis, construction manager for Wigton-Abbot, and attended by two representatives of the school authority, Mr. Hill and Mr. Ruza, and a representative of the architect. At this meeting, authorization was given to the architect to prepare five written change orders covering the work claimed by appellee. These change orders were signed by the architect, forwarded to appellee, and then forwarded to appellant for final payment. Appellee received payment on only one of the change orders in the amount of $350.00, the cost of removing a large tree from the job site.

■ Appellant argues that appellee never claimed that the change orders constituted written approval under the contract. The record belies such an argument. Appellant points to the statement made by appellee's attorney to the trial judge concerning the change orders: "That is right. They were never approved by the board. And that is why we are here." (N.T. p. 127). This comment was made during a conference in the retiring room away from the hearing of the jury. Although this statement can support appellant's theory that the change orders were not written authorizations, it can just as easily be interpreted as a recitation of case history. That is, had appellant honored and paid the change orders it authorized, the litigation

would not have arisen. Further, appellant argues that the following comment by the trial judge during his charge to the jury proves that the change orders could not be considered written authority: "The plaintiff has argued that, yes, he got authorization in various ways, that representatives of the defendant were at their meetings, knew what the claims were, and they approved the claims although there were no written authorizations." (N.T. p. 180). This excerpt from the record was made during an explanation to the jury of the argument appellant was making. Namely, that the change orders were of no effect whatsoever until approved by the board. The preface, "The plaintiff has argued ...," clearly shows that the trial judge was merely recalling for the jurors the thrust of appellant's argument.

When the change orders were offered into evidence, the following took place:

"MR. BETTY: These are just the change orders for each of the items in contention here that were signed by Durkin and where the prices have been agreed to by counsel. That would be P-1, 2, 3, 4 and 5.

THE COURT: Well, they are change orders. They were signed by the architect, and they were signed by the contractor. Now whether they are valid change orders is another issue.

MR. BETTY: That is another issue. We understand." (N.T. p. 103).

We agree with the trial judge that,

"The initial issue for the jury to decide was whether the execution of these five change orders was binding upon defendant (appellant). This issue was discussed on the record in the presence of all counsel as being a factual issue which must be decided by the jury. Defendant did not indicate any objection to the submission of this issue." (Lower Court Opinion at 5).

Appellant's next assertion is that appellee failed to prove that the extra work claimed received the written approval of the board as required by the contract. The relevant language in the contract reads as follows:

"GENERAL CONDITIONS

'2. *Definitions:*

"Approval or approved"—shall mean written approval of the Authority and the architect or their authorized representative.'

'16. *Changes and Alterations:*

A. No change in the contract shall be made without the *written approval of the Board.* A request for any change must be in writing.' " (Emphasis added)

Appellant relies on *Morgan v. Johnstown*, 306 Pa. 456, 160 A. 696 (1931), where the City of Johnstown was sued by a contractor for extra work caused by a change in the line of a sewer being installed by the plaintiff. Under the contract, written orders of the City Engineer were required for extra work. Plaintiff, relying on oral declarations of city officials, performed the additional work without obtaining the required written order from the City Engineer. The Supreme Court held that contracts with municipalities must be strictly pursued, and that since there was nothing in writing concerning the additional work claimed by the contractor and no evidence of any formal action by the City Council suggesting a waiver of the contract requirement for written change orders, the municipality should have prevailed.

Appellant also relies on a more recent case applying the same principles, *Scott Township School District Authority v. Branna Construction Corp.*, 409 Pa. 136, 185 A.2d 320 (1962). In *Branna*, the contractor sued on a claim for extra work in the construction of a school. The claim was based on an oral change order while the contract provided that changes would be binding only when in writing. No formal work orders were executed by the architect or by appellee and no changes were made in the plans or specifications. Recovery was denied under the holding in *Morgan v. Johnstown, supra:*

"Where a public contract states the procedures in regard to work changes and extras, claims for extras will not be allowed unless these provisions have been strictly fol-

lowed." (Citations omitted) *Branna, supra,* 409 Pa. at 140, 185 A.2d at 322. *See also, Emporium Area Joint School Authority v. Anundson Construction & Building Supply, Co.,* 191 Pa.Super. 372, 156 A.2d 554 (1959), rev'd on other grounds, 402 Pa. 81, 166 A.2d 269 (1960).

"In considering the pertinent clauses of the contract, we are governed by the ' * * * rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument.' " *Acchione v. City of Philadelphia,* 394 Pa. 622, 149 A.2d 125, 127 (1959) and cases cited therein. A reading of the contract provisions *in pari materia* necessitates defining the word "approval" in the contract requirement of "written approval by the Board." This definition indicates that change orders are valid if they have the written approval of the authority and the architect *or their authorized representative.* Although the Authority asserts that the signature of one of its members is necessary for a change order to be valid, such an interpretation is not absolutely required by the contract.

But, the function of contract interpretation and construction is a question of law for the court to decide. *National Products Co., Inc. v. Atlas Financial Corp.,* 238 Pa.Super. 152, 364 A.2d 730, 733 (1975). Here, the question of whether the written change orders were binding under the contract obviously went to the jury. Although it is possible to construe the contract definition of approval as allowing the authority and the architect to authorize either one of them to be "their authorized representative," such a construction of the contract is tenuous at best, and violates the plain meaning of the provision. Strictly construing these provisions as required by *Morgan,* we find that the signed change orders could not satisfy the written approval requirement of the contract.

However, such a finding is not necessarily dispositive of this appeal. As stated previously, in considering a request for judgment n.o.v., this Court must find and consider only

that evidence which supports the verdict, and all conflicts must be resolved in favor of appellee as verdict winner. *Moyer v. Ford Motor Company, supra.* Thus, if sufficient evidence was presented for the jury to find a waiver of the strict written authorization requirement of the contract, inadequacies in the execution of the written change orders are irrelevant.

 The trial court held that appellant had waived the requirement of a written authorization. In support of this finding, the court relied on *Wagner v. Graziano,* 390 Pa. 445, 136 A.2d 82 (1957), where the Supreme Court held that an agent of the owner can, orally, legally covenant to waive a specific contractual requirement of written approval of all agreements modifying a contract. Although *Wagner* appears not to have been followed in cases involving public contracts, we believe that a governmental unit can waive a written authorization requirement for extra work when the waiver is made in writing. Such a holding does not conflict with *Morgan* and its progeny, which dealt only with parole modification. In *Morgan,* the Supreme Court stated:

"All that is claimed as the basis for a waiver is that the individual members of counsel knew what was being done and approved it, and that the city acquiesced in this performance by accepting and paying for work which the only authorization or certification was in oral form." *Morgan v. Johnstown, supra* 306 Pa. at 464, 160 A. at 698.

Indeed, the Court's holding rested in substantial part on the absence of any evidence to show a formal waiver by the city authorities. *Id.* 306 Pa. at 465, 160 A. at 699. In this case, appellee performed the alleged extra work under protest after receiving a letter from the assistant secretary of the authority, written at the request of the president of the authority.

The Supreme Court in *Morgan* also stated, "If the plaintiff was not willing to proceed under the contract, he should have refused to go on with the work until he obtained the proper written authority of the engineer." *Morgan, supra*

306 Pa. at 465, 160 A. at 699. Here, appellee halted work on the project and notified appellant that it could not proceed until the contested items were resolved. Although the authority did state in its reply letter that "certain essential facts can only be resolved in the course of time," they now assert that appellee cannot recover because they never issued written approval for the extras. In a case involving a similar dispute, *Massiah v. Hood*, 138 Pa.Super. 90, 10 A.2d 79 (1939), defendants were the general contractors for the erection of a high school. Plaintiff was a sub-contractor hired to do the cement and concrete work. Plaintiff sued to recover the cost of supplying extra materials which he contended were outside of the contract. Defendants argued that they advised plaintiff at the time of construction that they were not going to pay for the disputed extra materials. This Court found that letters offered in evidence between plaintiff and defendants clearly indicated that the defendants refused to pay the plaintiff for the contested item because they insisted he was bound to supply such by the contract. The Court stated:

"Had appellee, because of interpretation of the plans and specifications by defendants that the wooden forms in controversy were embraced in the contract, refused to proceed with the work, he would have laid himself open to an action of damages for breach of contract if appellants' interpretations were sustained.

The appellants cannot avoid liability for the payment of this extra work where they compelled appellee to perform the same under the theory that it was part of the original contract: *Jackson et al. v. McKeesport, Appellant*, 305 Pa. 198, 157 A. 472; *approved in Mannella v. City of Pittsburgh, Appellant*, 334 Pa. 396, 402, 6 A.2d 70.

Where there is uncertainty as to what specifications are covered by a written contract, it may be explained by parol evidence and then becomes a question for the jury: *Kendig v. Roberts*, 187 Pa. 339, 40 A. 1022." *Id.* 138 Pa.Super. at 95–96, 10 A.2d at 82.

In his charge to the jury, the trial judge instructed: "So the plaintiff must show that this was outside of the scope of the contract, that he was authorized to do the work, or that there was a waiver of the written authorization in order to recover." (N.T. p. 181). *Morgan, Branna* and *Anundson,* which held that contract provisions requiring written orders for change cannot be orally waived, are clearly distinguishable from the instant case. The policy underlying those decisions, that contractors should be held to specifications in order to protect the public from inflated cost overruns, is not in danger when the governmental body chooses to waive, in writing, a contractual provision.

The uncontroverted testimony of the construction manager hired by appellant was that the contested work was extra work outside of the original contract. (N.T. p. 27). We hold that the evidence introduced at trial clearly supports the jury's verdict. Consequently, we find that the trial judge did not err in denying appellant's motion for a judgment n.o.v.

■■■ Appellant argues that a new trial should be awarded because non-suits should not have been granted to the additional defendants. This argument is clearly without merit. That expert testimony is necessary to establish negligent practice in a profession has long been the rule in Pennsylvania. *Bierstein v. Whitman,* 360 Pa. 537, 62 A.2d 843 (1949). In this case, appellee proceeded against appellant solely on a contract theory. Although testimony was taken as to discrepancies in the topographical data and the site drawings, the witnesses, Mr. Pharis and Mr. Durkin, were never held out to be experts qualified to testify that either of the additional defendants had breached the appropriate standard of care within the industry for construction contract design by a professional. It is settled: "Whether the witnesses' knowledge or experience justifies admitting his testimony for the consideration of the jury is a matter within the discretion of the trial judge...." (Citations omitted) *Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724, 728 (1974). Here, the trial judge stated in his opinion, with

which we are in substantial agreement, that "None of the testimony presented by plaintiff can be reasonably construed to contain an opinion that would support or tend to prove a cause of action against the design professional for malpractice." Lower Court Opinion at 9. We find no error in the entering of non-suits in favor of the additional defendants. For the above stated reasons, we affirm the order of the lower court.

Affirmed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I respectfully dissent. The majority determines that a governmental unit can waive a written authorization requirement for extra work when the waiver is made in writing. The majority appears to base its determination on a finding that a letter dated April 29, 1969, sent by the assistant secretary of the school authority to Appellee Thomas M. Durkin suffices to prove such waiver.

The law is clear that where a public contract states the procedure in regard to work changes and extras, claims for extras will not be allowed unless these provisions have been strictly followed. *Scott Township School District Authority v. Branna Construction Corp.*, 409 Pa. 136, 185 A.2d 320 (1962). I agree with the majority that *Branna* is not necessarily dispositive of the instant case because *Branna* involved *oral* modifications. However, it has also been held that a contract by a school board cannot be enlarged, diminished, supplemented or in any manner changed by evidence extraneous from the minutes, or by actions or declarations of officials of the school district. *Matevish v. School District of Borough of Ramey*, 167 Pa.Super. 313, 74 A.2d 797 (1950).

In *Emporium Area Joint School Authority v. Anundson Construction and Building Supply Company*, 191 Pa.Super. 372, 156 A.2d 554 (1959), *rev'd on other gds.*, 402 Pa. 81, 166 A.2d 269 (1960), the contract between the

authority and the contractor contained a provision regarding authorization for extra work similar to the provision in the instant case. The architect in that case gave the contractor change orders orally and allegedly threatened dire consequences if the contractor did not comply. The members of the authority were aware that changes were being made without the issuance of proper orders. The court determined that this evidence did not amount to a waiver of strict compliance with the terms of the contract. The court also stated that the contractor's alternative was to simply refuse to perform the extra work until proper written authority was obtained.

Likewise, in *Dick Corporation v. State Public School Building Authority*, 27 Pa.Commw. 498, 500–01, 365 A.2d 663, 664–5 (1976) the court stated:

It is a well-established rule of law that where, by the terms of a contract with a governmental body, written orders for additional work are required, the contractor cannot recover for extra work without compliance with the contractual provisions. *Montgomery v. Philadelphia*, 391 Pa. 607, 139 A.2d 347 (1958); *Burke v. Allegheny County*, 336 Pa. 411, 9 A.2d 396 (1939); *Morgan v. Johnstown*, 306 Pa. 456, 160 A. 696 (1931). And we have so held. *Security Painting Co. v. Commonwealth*, 24 Pa.Cmwlth. 507, 357 A.2d 251 (1976); *see [Department of Transportation v.] Acchioni and Canuso, supra*, 14 Pa.Cmwlth. [596] at 599, 324 A.2d [828] at 830. The basic rationale behind this rule is that such provisions prevent fraudulent and exhorbitant claims for compensation for extra work and additional costs. 65 Am.Jur.2d, *Public Works and Contracts*, § 190.

We believe that where, as here, written authorization from the contracting governmental authority is required before the contractor can recover for additional work performed, the contractor is not required to perform such work absent the required authorization. Strict adherence to the contract provision involved here must apply equally to both parties. The contractor, by refusing to perform,

took the only logical action available to him and he is entitled to recover any damages suffered by him as a result of the Authority's delay in providing the written authorization. (footnote omitted)

Therefore, Appellee clearly maintained the right to withhold performance of the extra work in the instant case until proper authorization was forthcoming.

Finally, I disagree that the April 29, 1969 letter constituted written waiver of the contract provisions regarding extra work in and of itself. That letter states:

Dear Mr. Durkin:

Dr. Charles R. Whittlesey, President of the Nether Providence Township School Authority, has requested that I acknowledge your letter dated April 25, 1969, concerning the site contract for the Nether Providence High School.

Please be assured that we are [sic] interested as you are in reaching a settlement that is just and equitable. It is clear that disagreement exists with respect to certain essential facts which can only be resolved in the course of time. Meanwhile, we are requesting you to proceed with the site work as you have done in the past so that there will be no delay in the progress of the building construction.

We are anxious to cooperate fully and look forward to a satisfactory settlement of this matter.

> Very truly yours,
> /s/ Frederick E. Welte
> Assistant Secretary

In my opinion, the letter does not explicitly or implicitly waive the contractual requirements for authorization of extra work in the instant case. I therefore can find no *written* waiver of the provisions of the contract and would hold that, for the reasons set forth supra, the instant case should be reversed.